**Bill KIRBY, Plaintiff,**

v.

**SBC SERVICES, INC., Defendant.**

**No. Civ.A. 303CV3010L.**

United States District Court,
N.D. Texas, Dallas Division.

April 27, 2005.

John P. Polewski, Polewski & Associates, Desoto, TX, for Plaintiff.

Marisia Parra–Gaona, Darrell L. Guy, Dallas, TX, for Defendant.

## *ORDER*

LINDSAY, District Judge.

Before the court are Defendant SBC Services, Inc.'s Motion for Summary Judgment, filed November 5, 2004; Plaintiff's

Objections to Defendant's Summary Judgment Evidence, filed November 26, 2004; and Defendant SBC Services, Inc's Reply to Plaintiff's Objections to Defendant's Summary Judgment Evidence and Objections to Plaintiff's Evidence, filed December 13, 2004. After careful consideration of the motion, response, reply, appendices, objections, and applicable law, the court **grants** Defendant SBC Services, Inc.'s Motion for Summary Judgment; **overrules as moot** Plaintiff's Objections to Defendant's Summary Judgment Evidence; and **overrules as moot** Defendant SBC Services, Inc's Objections to Plaintiff's Evidence.

## I. *Procedural and Factual Background*

Plaintiff Bill Kirby ("Plaintiff" or "Kirby") brings this action against his former employer, Defendant SBC Services, Inc. ("Defendant" or "SBC"), claiming that it violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.* and the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001, *et. seq.* He contends that SBC terminated him because of his age and to prevent him from receiving pension and employee benefits. SBC contends that Kirby was terminated for his violations of company e-mail and Internet use policies. The court now sets forth the facts on which it relies to resolve the summary judgment motion. In setting forth the facts, the court applies the summary judgment standard as set forth in the following section.

Plaintiff Kirby, 53, was born on September 26, 1951, and was hired by Southwestern Bell Telephone Company ("Southwestern Bell") in 1969. In 1976, Kirby was promoted to a management position in Southwestern Bell's affiliate company, SBC. In 1986, Kirby was transferred to SBC's Plug-in Inventory Control System

("PICS") warehouse in Lancaster, Texas where he worked as a manager until his termination in February, 2000. His job responsibilities included purchasing and shipping materials to Southwestern Bell and its affiliates and managing the warehouse inventory. Kirby's direct supervisor was Bruce Dunn ("Dunn"), his director-level manager was Cathy Davis ("Davis"), and his senior-level manager was Bill Dempsey ("Dempsey"). With respect to personnel issues for the group, the second-level human resource manager was Cynthia Sooter ("Sooter"), and the director-level manager was Richard Frost ("Frost").

SBC issued Kirby a personal computer and granted him access to electronic mail ("e-mail") in the workplace. His use of the company-issued personal computer and e-mail facilities was subject to various company policies, including SBC's Electronic Mail Policy, Internet Access Policies and Guidelines, Electronic Mail Users' Standards and Guidelines, Internet and Intranet Usage, Development and Security Standards and Guidelines, and SBC Operating Practice 113. In general, SBC's policies prohibit personal use of e-mail. The SBC Internet Access Policies and Guidelines states that employees were not to "access, download, e-mail, store or print material that could be considered inappropriate, offensive or disrespectful to others." App. to Def. SBC Services, Inc.'s Br. in Supp. of Mot. for Summ. J. at 48. The SBC Electronic Mail Policy directs employees to "not forward non-business-related material (e.g., chain letters, games, jokes, video clips, etc.)" and "not send threatening or sexually, racially, or otherwise offensive language, text or pictures." *Id.* at 45. Further, SBC policy requires employees to take necessary steps to avoid the transmission and receipt of non-business related e-mails. Specifically, the SBC Electronic Mail Users' Standards and Guidelines di-

rects employees to "not take actions, such as sharing your e-mail address, that may enable others to send you non-business-related e-mail through SBC e-mail, computer or telecommunications systems," and to "[d]elete non-business-related e-mails immediately. If delivery persists, take appropriate steps to stop it if you are personally familiar with the sender.... Do not hesitate to seek assistance from your local Asset Protection organization." App. to Def. SBC Services, Inc.'s Br. in Supp. of Mot. for Summ. J. at 52–53. Finally, the SBC Electronic Mail Policy states that "[t]he Company reserves the right to access, monitor, audit, inspect, review, retain or disclose any e-mail sent, received, stored, or contained by or in Company resources and e-mail systems." *Id.* at 45–46. Kirby states in his deposition that he was aware of these written policies, but contends that there was also an unwritten "policy of actual use" which allowed employees to use these facilities, in reasonable amounts, for personal use. *Id.* at 9—10.

A former Regional Manager of the SBC Data and Computer Security ("DCS") group, Barry Rabin ("Rabin"), was responsible for monitoring the e-mail gateway that transported e-mail for Kirby's work group. Pursuant to his job duties, Rubin would review a daily "gateway report" that listed e-mails that exceeded 50,000 bytes in size and the UserIDs associated with those e-mails. Rabin would then determine whether the nature of the attachment was business or non-business related. Based on his assessment, if the e-mail was non-business related, he would contact the director-level and human resource managers of the employee who had sent or received the e-mail and request permission for the DCS group to conduct a thirty-day e-mail review on the employee. If the DCS review revealed a violation of company policy, Rabin would conduct a security investigation of the employee to present to management and human resources personnel.

On January 25, 2000, Rabin conducted a routine review of the daily gateway report and determined that Kirby forwarded e-mail attachments that exceeded the prescribed size limit. Having determined that the e-mails were personal in nature, Rabin recommended to Davis and Frost that he conduct a security investigation of Kirby to determine the nature and extent of Kirby's violation of company policies. Davis and Frost agreed with Rabin's recommendation and authorized him to conduct a thirty-day e-mail usage review on Kirby. Rabin's review of the thirty previous days, December 20, 1999 to January 19, 2000, revealed that Kirby received and transmitted non-business related e-mails to and from various e-mail addresses and that many of those e-mails and attachments contained sexually explicit or otherwise offensive material. App. to Def. SBC Services, Inc.'s Br. in Supp. of Mot. for Summ. J. at 140–60.

Rabin forwarded his findings to Frost and Davis. Rabin, Frost, and Sooter contacted Associate Director of Ethics and Compliance Hilda Ramirez ("Ramirez") to determine the appropriate discipline for Kirby's violations of company policy. At the time of Kirby's termination, Ramirez was responsible for personally reviewing cases where employees violated company e-mail and Internet use policies and ensuring that SBC's policies were enforced evenhandedly across all organizations. In her job capacity, Ramirez advised Sooter that other employees who were discovered to have received and transmitted e-mail messages containing sexually explicit material, similar to those found in Kirby's e-mails, were, in all instances, terminated. App. to Def. SBC Services, Inc.'s Br. in Supp. of Mot. for Summ. J. at 161–62.

Sooter also contacted Joseph R. Dyer ("Dyer") in SBC's legal department seeking advice and a recommendation on how to handle Kirby's violations of SBC policies. After her discussions with Ramirez and Dyer, Sooter advised her superior, Frost, that all employees who were discovered to have received and transmitted sexually explicit material via e-mail had been terminated. Frost then recommended to Dempsey that Kirby be fired for "e-mail abuse." App. to Def. SBC Services, Inc.'s Br. in Supp. of Mot. for Summ. J. at 172. Dempsey made the decision to discharge Kirby, effective February 2, 2000. Kirby was forty-eight years old and had twenty-eight years of service with SBC at the time of his termination. Kirby was subsequently replaced by Patricia Lindholm ("Lindholm"), who is approximately five years older than Kirby.[1]

On December 12, 2002, Plaintiff filed an original complaint in the 162nd District Court of Dallas County, Texas. On September 17, 2003, the state court dismissed the case for, among other things, lack of subject matter jurisdiction.[2] Plaintiff filed his original complaint in this case on December 18, 2003. On November 5, 2004, SBC filed a motion for summary judgment. The court now considers this motion.

## II. Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Ca-*

trett, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (1986); *Ragas,* 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Anderson,* 477 U.S. at 254–55, 106 S.Ct. 2505.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). The party opposing summary judgment is

---

1. Lindholm was born on June 24, 1946.

2. The court's determination with respect to the state court's disposition of Plaintiff's

claims are discussed in more detail in Section III., A., *infra.*

required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.; see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. The court now addresses the parties' contentions with respect to Defendant's motion for summary judgment.

## III. *Analysis*

### A. Res Judicata

■■■ Defendant contends that Plaintiff's claims are barred by res judicata because they have already been litigated in state district court. Plaintiff, on the other hand, contends that the September 17, 2003 order from the 162nd District Court of

Dallas County, Texas, was a dismissal for lack of subject matter jurisdiction and, therefore, his claims have not yet been litigated. The court determines that Plaintiff's claims are not barred by res judicata.[3]

The state district court order of July 18, 2003 regarding Defendant's motion for summary judgment contains three grounds from which the court could select (by checking a blank next to the ground) to indicate its determination and disposition of the case. The court checked all the blanks, despite the inherent inconsistency in selecting more than one ground. Specifically, one ground states that the court is of the opinion that "[s]aid motion is meritorious in its challenge of this Court's jurisdiction to hear this case and should be, in all things granted, thereby dismissing Plaintiff's age discrimination and retaliation claims for *lack of subject matter jurisdiction.*" App. to Def. SBC Services, Inc.'s Br. in Supp. of Mot. for Summ. J. at 214 (emphasis omitted and emphasis added). Another ground, also selected by the court, states that the court is of the opinion that "[s]aid motion is meritorious and should be, in all things granted, thereby dismissing Plaintiff's age discrimination and retaliation claims *via summary judgment.*" *Id.* (emphasis omitted and emphasis added). The state court order clearly demonstrates that the state court (1) did not have subject matter jurisdiction, but, nevertheless, (2) decided Plaintiff's claims on the merits.[4] A court simply does not

---

**3.** The doctrine of res judicata prevents the relitigation of claims that have already been finally adjudicated or that should have been litigated in a prior lawsuit. This doctrine applies when: (1) there was a prior final judgment on the merits by a court of competent jurisdiction; (2) the prior judgment was between identical parties or those in privity with them; and (3) there is a second action

based on the same claims as were raised or could have been raised in the first action. *U.S. ex rel. Laird v. Lockheed Martin Eng'g and Sci. Servs. Co.,* 336 F.3d 346, 357 (5th Cir. 2003).

**4.** As to the third ground, also selected by the state court, the order states "[s]aid motion is meritorious in its challenge of this Court's

have the authority to decide claims on the merits if it lacks subject matter jurisdiction. This principle of law is so well-established that no cite to authority is even necessary. As the court stated in its order that it did not have subject matter jurisdiction, it *could not* have decided the merits of Plaintiff's claims. Accordingly, as Plaintiff's claims have not yet been litigated, Plaintiff is not barred by res judicata from having this court decide his claims on the merits.

## B. ADEA Claim

The court now addresses whether Defendant unlawfully discriminated against Plaintiff on the basis of his age in violation of the ADEA. Defendant contends that it terminated Kirby's employment for his violations of company e-mail and Internet use policies. Kirby contends that SBC unlawfully discriminated against him on the basis of age when it terminated him on February 2, 2000, and its stated reason for termination is pretextual.

■ Kirby brings his claim of age discrimination under the ADEA. The ADEA prohibits an employer from discriminating against any individual, in hiring or discharge, or in the terms and conditions of employment, on the basis of age. 29 U.S.C. § 623(a)(1). To establish a *prima facie* case of employment discrimination under ADEA, Plaintiff must prove that: " '(1) he was discharged; (2) he was qualified for the position; 3) he was within the

protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.' " *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir.2004) (quoting *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003)).

■■ Defendant contends that Plaintiff cannot establish a *prima facie* case of age discrimination under the ADEA because a person older than he was hired as his replacement. Kirby, citing *Urbano v. Continental Airlines*, 138 F.3d 204, 206 (5th Cir.1998), and *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), contends that it is not necessary that he prove that he was replaced by someone younger, and that he must only show that others similarly situated were more favorably treated. While Plaintiff's reliance on *Urbano*, a Pregnancy Discrimination Act ("PDA") case, is incorrect and therefore inapplicable to a claim under the ADEA,[5] he is correct that he need not demonstrate that he was replaced by someone younger. Plaintiff, however, under *Reeves*, must show either that he was replaced by someone outside the protected class, replaced by someone younger, or otherwise discharged because of his age. *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097; *see also Rachid*, 376 F.3d at 309. Lindholm, Kirby's

jurisdiction to hear this case and should be, in all things granted, thereby dismissing Plaintiff's age discrimination case; conjunctly, the Motion is also meritorious on Plaintiff's retaliation claim and should be, in all things granted, thereby dismissing the retaliation claim via summary judgment." App. to Def. SBC Services, Inc.'s Br. in Supp. of Mot. for Summ. J. at 214 (emphasis omitted). The court is not certain of the import of this ambiguous statement, but in the sum of things it is really of no moment because the state

court clearly held that it lacked subject matter jurisdiction to hear Plaintiff's claims.

5. The court finds Plaintiff's reference to *Urbano* interesting, as he is clearly aware that the *Reeves* decision is a leading ADEA case and even argues in his brief that *Reeves* is "the leading case on the proper framework for analysis of these types of cases." Br. in Supp. of Pl.'s Resp. to Def.'s Mot. for Summ. J. at 10.

replacement, was born on June 24, 1946, and is, therefore, neither outside Plaintiff's protected group nor younger than Plaintiff. Accordingly, the evidence establishes that Plaintiff was not replaced by someone younger than he.[6]

With respect to the remaining alternative for establishing the fourth prong of Plaintiff's *prima facie* case, that he was "otherwise discharged because of his age," several Fifth Circuit decisions provide guidance as to what evidence can establish this element of a plaintiff's *prima facie* case. In *Machinchick v. PB Power, Inc.,* 398 F.3d 345 (5th Cir.2005), the court determined that the plaintiff had established the fourth prong by proffering evidence including: (1) an e-mail discussing the company's intention to hire younger engineers and designers, (2) a business plan expressing the goal of hiring employees with "21st century" mindsets, (3) several age-stereotyping stray remarks, (4) disparate treatment of younger employees, and (5) inquiries about when the plaintiff planned to retire. *Id.* at 353–54. In another case, *Palasota v. Haggar Clothing Co.,* 342 F.3d 569 (5th Cir.2003), the Fifth Circuit determined that the plaintiff's evidence of (1) age-related stray remarks, (2) a company campaign to present a more youthful image, (3) an executive memorandum discussing elimination of employees over the age of fifty, and (4) a noticeable shift in responsibilities to a younger group

of employees raised a sufficient inference of discrimination for a *prima facie* showing of being "otherwise discharged because of his age." *Id.* at 576–78.

In this case, Kirby provides no evidence of stray remarks, a company plan of presenting a more youthful image, company memorandums, inquires about retirement, or any other evidence that would raise a reasonable inference that his discharge was because of his age. Further, Plaintiff cites no authority which finds age discrimination under circumstances similar to those of his termination. Moreover, the competent summary judgment evidence shows that Kirby's work group contained several employees who were over the age of forty, and the primary decisionmakers in Kirby's termination are older than he and have testified that his age was not a factor in their decision to terminate him. To the extent Plaintiff provides any evidence, it is limited to evidence for the purpose of attempting to show that similarly situated persons were treated differently, which, as previously discussed, is not the proper test for an ADEA age discrimination claim. Even if Plaintiff could use this approach, he fails to show that persons who received and distributed sexually explicit or otherwise offensive e-mails were treated differently than he.[7] Ramirez testified that all persons that were in possession of sexually explicit or other-

---

**6.** Kirby was born on September 26, 1951.

**7.** Plaintiff states in his affidavit that to his "actual knowledge," all of his peers and his supervisor, Bruce Dunn, routinely received and sent e-mails of a personal nature, including e-mails containing cartoons and jokes of an "off color" or "dirty" nature. App. to Pl. Bill Kirby's Br. in Supp. of Pl.'s Resp. to Def.'s Mot. for Summ. J. at 3. Kirby states further that "[n]obody else besides me was ever terminated for simply receiving e-mails, and nobody besides Sherrill Warmack ever received so much as a warning." *Id.* Plain-

tiff, however, has not raised a question of material fact, as he does not proffer evidence, other than his conclusory statements, that these individuals were ever found *by SBC* to have violated company e-mail and Internet use policies in a similar manner or to a similar extent as he had and were treated better. Further, the court notes that Defendant's stated reason for terminating Kirby is not "receiving e-mails," as Plaintiff states, but for sending and distributing sexually explicit or otherwise offensive e-mails.

wise offensive e-mails had been terminated. Plaintiff avers that Warmack was similarly situated, however, he fails to establish this similarity by demonstrating that she too had received and distributed sexually explicit or otherwise offensive e-mails.[8]

 While the action taken by SBC against Kirby in this case may seem harsh, "[t]he ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personnel managers." *Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1507–08 (5th Cir.1988) (internal citations omitted). The receipt and distribution of sexually explicit or otherwise offensive e-mails is sufficient grounds for disciplinary action against an employee, up to and including termination. "The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated." *Id.* at 1508 (internal citation omitted). The court determines that Kirby fails to establish, or raise a genuine issue of material fact, that he was otherwise discharged because of his age in violation of the ADEA. Accordingly, Plaintiff has not made a *prima facie* case, and SBC is entitled to judgment as a matter of law on Kirby's ADEA age discrimination claim.

### C. ERISA Claim

Plaintiff also alleges that Defendant terminated him with the intent of denying him benefits under ERISA. Defendant contends that it did not terminate Plaintiff with the specific intent of denying him benefits under ERISA, but because of his violations of company e-mail and Internet use policies. Defendant contends further that it is entitled to judgment as a matter of law on this claim. Plaintiff contends that summary judgment on his ERISA claim is inappropriate, as he can proffer circumstantial evidence (namely, that employer's stated reasons for denial of benefits is pretextual) demonstrating Defendant's intent to deny him benefits. Plaintiff claims that, pursuant to *Reeves,* "[e]vidence that the stated reasons for Defendant's adverse action is false is ... sufficient in itself to preclude summary judgment." Br. in Supp. of Pl.'s Resp. to Def.'s Mot. for Summ. J. at 25. Further, Plaintiff contends that, under *Reeves,* "the failure of Defendant to come forward with competent evidence of a policy which was enforced against any other SBC Services employee for the same infraction of which Kirby is accused ends the inquiry and requires that Defendant's motion be denied." *Id.* at 25. Plaintiff states that he has "ample evidence" demonstrating that Defendant's claim that Kirby was fired for e-mail abuse is a pretext and that "[a]dditional evidence of an illegal intent in this context comes from the huge size of Defendant's motive to fire Kirby," namely, Plaintiff's retirement benefits, which exceeded $550,833.91.[9] *Id.*

 Section 1140 of ERISA makes it unlawful for an employer to "discharge,

---

**8.** No evidence in the record establishes that Warmack received and distributed sexually explicit or otherwise offensive e-mails. While the record does indicate that she may have received some personal e-mails, it is devoid of evidence that she engaged in the conduct of forwarding sexually explicit or otherwise offensive e-mails. Further, Plaintiff never denies that he did receive and forward sexually explicit or otherwise offensive e-mails. Accordingly, she is not similarly situated to Kirby, and his claim necessarily fails.

**9.** Kirby states that he would have been eligible for an early retirement option, receiving full benefits, on November 15, 2000. App. to Pl. Bill Kirby's Br. in Supp. of Pl.'s Resp. to Def.'s Mot. for Summ. J. at 4.

fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an ERISA] plan...." 29 U.S.C. § 1140. Section 1140 therefore consists of two components: (1) an anti-retaliation component, which prohibits an employer from retaliating against an employee for exercising ERISA rights; and (2) an anti-interference component, which prohibits an employer from interfering with an employee's future rights to benefits.

■ To prevail on a section 1140 claim, Kirby must first set forth a *prima facie* case. *See Stafford v. True Temper Sports,* 123 F.3d 291, 295 (5th Cir.1997). To establish a *prima facie* case under the statute, Plaintiff must prove, or raise a genuine issue of material fact, that SBC, acting with specific discriminatory intent, fired him in order to interfere with his rights under ERISA or to prevent him from gaining benefits he would otherwise be entitled to under an ERISA plan. *Id; Rogers v. International Marine Terminals, Inc.,* 87 F.3d 755, 761 (5th Cir.1996). Specific discriminatory intent is an essen-

tial element of Plaintiff's retaliation claim. *Rogers,* 87 F.3d at 761 (citing *Hines v. Massachusetts Mutual Life Ins. Co.,* 43 F.3d 207, 209 (5th Cir.1995)). Plaintiff "need not prove that the discriminatory reason was the only reason for discharge but he must show that the loss of benefits was more than an incidental loss from his discharge, and this inference of discrimination can be prove[d] by circumstantial evidence." *Id.* If Plaintiff proves a *prima facie* case, Defendant "must articulate a non-discriminatory reason for its actions, and then the burden shifts to [Plaintiff] to prove this reason is a pretext...." *Id.*

■ The court determines that Kirby does not meet his burden of setting forth a *prima facie* case under section 1140. Plaintiff only makes conclusory statements that Defendant terminated his employment with the specific intent of denying him benefits under ERISA. Plaintiff's contention that ample evidence exists in support of his position that Defendant had specific intent to deny him benefits under ERISA is without merit. In support of his position, Plaintiff provides evidence that (1) Defendant saved a substantial amount of money by terminating him in February 2000, nine months prior to his eligibility for benefits;[10] (2) Plaintiff's re-

**10.** While proximity of time may be a factor, it is not the determining factor. *Compare Burfield v. Brown, Moore & Flint, Inc.,* 51 F.3d 583, 590 (5th Cir.1995) (In the context of a Texas workers' compensation claim, the court looked to temporal proximity between a protected activity and an adverse employment action for circumstantial evidence of a retaliatory motive.). In considering Plaintiff's "temporal proximity" argument the court, by analogy, considered cases in which plaintiffs have argued temporal proximity in support of claims under Title VII to determine if temporal proximity, in and of itself, is sufficient to survive summary judgment. In the context of discrimination claims under Title VII, the Fifth Circuit has held that " 'the combination

of suspicious timing *with other significant evidence of pretext,* can be sufficient to survive summary judgment.' " *Evans v. City of Houston,* 246 F.3d 344, 356 (5th Cir.2001) (quoting *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 409 (5th Cir.1999)) (emphasis added). In *Evans,* the court held that the close temporal proximity (5 days) between the plaintiff's appearance to testify in a discrimination hearing on behalf of a co-worker's and her demotion *coupled with* the lack of any documentary evidence that would suggest "a theory of disciplinary problems," supported an inference of retaliation. In this case, the record is rife with documents demonstrating that Kirby violated SBC's e-mail and Internet use policies. That Kirby was terminated nine

placement did not have the same years of service and age combination that would make her eligible for benefits under ERISA; and (3) Sherill Warmack ("Warmack")[11] was not fired for violating the same company policies.[12] As Plaintiff has not demonstrated, through competent summary judgment evidence, that SBC had a specific discriminatory intent to deny him any right or benefit to which he was entitled under ERISA, he has not raised a genuine issue of material fact, and SBC is entitled to judgment as a matter of law on his ERISA claim.

### D. Statute of Limitations

Defendant also moves for summary judgment on the grounds that Plaintiff's claims arising from his termination are barred by the applicable statute of limitations. The court has determined that Defendant is entitled to judgment as a matter of law on all of Plaintiff's claims. More importantly, Defendant did not plead a statute of limitations affirmative defense in its answer as required by Rule 8(c) of the Federal of Civil Rules of Procedure, and the court denied Defendant's motion to amend its answer to assert a statute of

limitations defense in its November 10, 2004 order. The court, therefore, may not consider Defendant's argument on this issue as a basis for summary judgment.

### E. Pending Matters

Both parties have filed objections to the opposing party's summary judgment evidence. The court has previously set forth the applicable standard for competent summary judgment evidence. If the summary judgment evidence did not meet the standard or applicable rules of evidence for summary judgment motions, the court did not consider it, and such evidence played no part in the court's ruling. The court therefore **overrules as moot** Plaintiff's Objections to Defendant's Summary Judgment Evidence and **overrules as moot** Defendant SBC Services, Inc's Objections to Plaintiff's Evidence. Moreover, even if the court considers Plaintiff's evidence to which Defendant has made objections, it would reach the same result.

### IV. *Conclusion*

For the reasons stated herein, no genuine issues of material fact exist with re-

---

months before his eligibility for benefits, coupled with documentary evidence of his violation of company policies, does not support an inference that SBC had the specific intent to deny him benefits under ERISA.

11. Plaintiff states in his affidavit that at the time of his termination, Sherill Warmack was 46 years old and had 23 years of service with "the Bell system." App. to Pl. Bill Kirby's Br. in Supp. of Pl.'s Resp. to Def.'s Mot. for Summ. J. at 3. As discussed, *supra*, Kirby was 48 years old and 28 years of service with SBC. By offering this information, Plaintiff argues that Sherill Warmack received a less harsh punishment for violating company policies because she was not as close to eligibility of benefits as he was at the time of his termination. The court determines that this conjecture is insufficient to infer that Defendant's basis for terminating Kirby was to deny him benefits under ERISA.

12. Plaintiff offers Warmack's deposition for the purpose of showing that she engaged in the same conduct as Kirby and was not terminated. The court, however, notes that the substance of her testimony does not support Plaintiff's assertion, as there is at least one major difference between her conduct and that of Defendant. Plaintiff was terminated for receiving and forwarding sexually explicit or offensive e-mails against company policy. While Warmack's deposition establishes that she received "personal" e-mails, there is no evidence in the record that Warmack had also received and forwarded "sexually explicit or otherwise offensive" e-mails. The court determines, therefore, that Plaintiff's assertion that he was fired because SBC had the specific intent to deny him ERISA benefits is unsupported by the evidence that he provides to the court, including Warmack's deposition.

spect to Plaintiff's claims, and Defendant is entitled to judgment as a matter of law on all of Kirby's claims. Accordingly, the court **grants** Defendant SBC Services, Inc.'s Motion for Summary Judgment; **overrules as moot** Plaintiff's Objections to Defendant's Summary Judgment Evidence; **overrules as moot** Defendant SBC Services, Inc's Objections to Plaintiff's Evidence; and **dismisses with prejudice** this action against Defendant SBC Services, Inc. The court will issue judgment by separate document pursuant to Fed.R.Civ.P. 58.

**It is so ordered.**