**Mario CARLOS, Plaintiff,**

v.

**WHITE CONSOLIDATED INDUSTRIES, INC., d/b/a the Eureka Company and Nancy Guerrero, Defendants.**

**No. EP–95–CA–219–H.**

United States District Court,
W.D. Texas,
El Paso Division.

May 14, 1996.

---

Jaime A. Villalobos, El Paso, TX, for plaintiff.

Michael D. McQueen, El Paso, TX, Robert L. Blumenfeld, Kemp, Smith, Duncan & Hammond, El Paso, TX, for defendants.

1. The trial proceeded against Defendants Eureka and Nancy Guerrero, who is a human resources employee at Eureka. At the close of evidence, the Court granted Guerrero's Rule 50 motion based on the fact that individuals such as her are

*MEMORANDUM OPINION AND ORDER*

HUDSPETH, Chief Judge.

This is a negligence action under the common law of the State of Texas, and a wrongful discharge action under § 510 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1140. This Court has subject matter jurisdiction over this cause because Plaintiff Mario Carlos's wrongful discharge claim is a claim arising under the laws of the United States, and his negligence claim falls within the Court's supplemental jurisdiction. *See* 28 U.S.C. §§ 1331 and 1367(a). The Court's findings of fact and conclusions of law are incorporated in this opinion. Additionally, the Court notes that Carlos's negligence action is subject to comparative responsibility analysis pursuant to the laws of the State of Texas. *See* TEX.CIV. PRAC. & REM.CODE ANN. § 33.001.

In general, Carlos claims that Defendant White Consolidated Industries, Inc., d/b/a The Eureka Co. (Eureka), was negligent on or about December 10, 1994, when Carlos allegedly sustained an on-the-job injury.[1] Carlos also alleges that he was wrongfully discharged by Eureka for pursuing benefits under Eureka's ERISA plan. In connection with Carlos's negligence claim, Eureka denies that it was negligent in any way, and that if anything, Carlos was the proximate cause of his own injuries. In connection with Carlos's wrongful discharge claim, Eureka denies that it discriminated in any manner against Carlos because he filed a claim or received benefits for his alleged job-related injury. Specifically, Eureka maintains that it discharged Carlos for legitimate nondiscriminatory reasons—i.e., for violating the company's policy against sexual harassment, and also for poor work performance.

Mario Carlos was hired by Eureka on August 6, 1990, as a machine operator. He was promoted to forklift operator, and then transferred to the quality control department. He eventually rose to the position of Group Leader. On September 9, 1994, he was ac-

not subject to liability under § 510 of ERISA, and that she had no liability for any negligence. Therefore, this memorandum opinion relates only to Eureka.

cused of sexual harassment by Maria L. Roque de Aragon. Based on this complaint, he was transferred from the quality control department back to machine operator.

On December 10, 1994, he was injured while working on two machines. At about 4—5 o'clock p.m., Carlos felt a intense pain in his back. He filled out an accident report and gave it to Rick Montes, his supervisor. Earlier, he had asked for help dealing with the two machines. On the next day, December 11, 1994, he went to work with his back still hurting. He advised his supervisors; they told him he could take the afternoon off without pay. He declined their offer, and remained at work. On the next day, Carlos reported his back pain again and requested to be sent to a doctor. Eureka did not volunteer to send him. At 2:00 o'clock p.m., Carlos decided to go home due to his continued back pain. While at home he rested his back.

The next day, Carlos went to see Rosalie Luckey, the Health and Safety Manager at Eureka, who referred him to Dr. Najera. Dr. Najera took X-rays and ran some other tests on Carlos's back. He said he thought he saw something wrong. He wanted to refer Carlos to a radiologist. By the next day he had changed his mind about the extent of Carlos's injury, and released him to full duty. Carlos returned to full duty in spite of the fact that his back pain persisted. Carlos next went to Dr. Romero for depression, which was caused by Roque de Aragon's sexual harassment charge that had been levelled against him. Around February 20, 1995, Carlos went to Dr. Patricia Miller, a doctor of chiropractic medicine, for his back pain. She placed him on a regimen of physical therapy, for which he never missed a day of work. On March 17, 1995, Eureka in the person of Nancy Guerrero, an Employment Coordinator for Eureka, discharged Carlos, purportedly for repeated violations of the company's sexual harassment policy, and for repeatedly producing bad parts.

■ Because Eureka is a workers' compensation nonsubscriber, Carlos must establish negligence by Eureka in order to recover for his back injury. *Werner v. Colwell*, 909 S.W.2d 866, 868 (Tex.1995). At trial Carlos alleged that he was injured due to Eureka's negligence: (1) in allowing him to work on two machines at once without the help of another employee; (2) in not providing him with a lifting belt; and (3) in not providing him with proper training and supervision. The Court finds that Carlos's negligence claim fails because he has not shown by a preponderance of the evidence that Eureka's actions were more negligent than his own. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 33.001.

■ In order to establish negligence, evidence must be produced to establish a duty, a breach of that duty, and damages proximately caused by the breach. *Werner, supra* at 869. There may be more than one proximate cause of an accident. *Wal–Mart Stores, Inc. v. Berry*, 833 S.W.2d 587, 590 (Tex.App.—Texarkana 1992, writ denied). Although an employer is not an insurer of his employees' safety at work, an employer does have a duty to use ordinary care in providing a safe work place. *Werner, supra* at 869. This duty includes an obligation to provide adequate help under the circumstances for the performance of required work. *Werner, supra* at 869. Carlos claims that Eureka breached this duty by requiring him to work on two machines at once without additional assistance. As plaintiff, Carlos bears the burden of presenting legally sufficient evidence that Eureka required Carlos to work with two machines at once where a reasonably prudent employer would not have done so.

■ According to Carlos himself, Carlos and other employees would occasionally work with two machines at once. This was not unusual nor did it pose a foreseeable threat of injury. The question here is whether Eureka required Carlos to work on two machines at once when he should have been allotted additional assistance. Carlos in essence argues that one man was insufficient to run the two machines at once. However, there was no evidence that Carlos constituted an inadequate work force to do the required work. When there is no evidence that the lifting involved is unusual or poses a threat of injury, the plaintiff has failed to establish negligence. *Werner, supra* at 869. Such is

the case here, and Carlos's inadequate work force theory must fail.

■ Carlos's second theory of negligence is that Eureka negligently failed to provide him with a lifting belt. Eureka denies this claim. After hearing all the probative evidence, the Court finds that Eureka was not negligent for failing to provide Carlos with a lifting belt. In general, an employer has a duty to provide lifting belts to an employee if it would help in the performance of his duties, and would make the work place safe. *See Leitch v. Hornsby,* 885 S.W.2d 243, 247 (Tex.App.—San Antonio 1994, no writ). Carlos testified that he had not asked Eureka for a lifting belt because he was told by certain unnamed co-workers that such a request would be futile. Eureka responded by bringing forth evidence that if asked it does give lifting belts, and by arguing that Carlos had not brought forth any evidence supporting the notion that a lifting belt would have prevented his back injury. The Court finds Eureka's evidence to be highly probative and truthful as to this issue. Therefore, the Court finds that the failure of Eureka to provide a lifting belt was not a proximate cause of Carlos's injury.

■ Carlos's last claim of negligence was an alleged failure on the part of Eureka to train and supervise him. The testimony showed that Carlos had not been bothered by back pains until after he was switched to his new job. Such a sequence of events can establish cause in fact. *Baylor Medical Plaza Services v. Kidd,* 834 S.W.2d 69, 75 (Tex. App.—Texarkana 1992, writ denied). Additionally, there was testimony that Eureka offered no safety training following the employee's review of the company's safety manual or supervision of employees on how to properly use the machines. Furthermore, there was testimony that proper coordination and supervision could have avoided the back injury problem. See *Phelan v. Lopez,* 701 S.W.2d 327, 331 (Tex.App.—Beaumont 1985, no writ). In response, Eureka claims that Carlos was negligent in that it provided a safety manual that Carlos was supposed to read which he did not, and that he did not employ the proper lifting techniques as he was instructed to. Carlos replied that Eure-

ka never held safety meetings with their employees in order to reinforce the proper lifting techniques illustrated in the safety manual. Furthermore, there is evidence that Carlos was never instructed on how properly to handle two machines at once. It is reasonable to infer from all this testimony that both Carlos's failure to fully read the company's safety manual and to implement its suggested lifting techniques, and Eureka's failure to properly train and supervise Carlos were each proximate causes of Carlos's injury. Based on the concept of comparative responsibility this Court finds that Carlos was fifty-five (55) percent negligent for failing to properly use the suggested lifting techniques from the company's safety manual, and that Eureka was forty-five (45) percent negligent for failing to properly train and supervise Carlos in the use of two machines at once. Consequently, Eureka is entitled to a take nothing judgment on Carlos's negligence claim.

Carlos was hired by Eureka on August 6, 1990, and was discharged from Eureka on March 17, 1995. At all times relevant to this lawsuit, Eureka was not a subscriber to the Texas Workers' Compensation Act; instead, it maintained a self-insured plan which provided medical and lost-time benefits to employees who sustain on-the-job injuries. This plan was an employee welfare benefit plan as defined by ERISA in 29 U.S.C. § 1002(1). While Carlos was employed by Eureka, he made a claim for and received benefits from Eureka's occupational injury benefit plan. While Carlos was employed by Eureka, in September 1994, a temporary worker on assignment at Eureka, Maria L. Roque de Aragon, complained that Carlos had sexually harassed her. Eureka investigated Roque de Aragon's complaint. As a result of this investigation, in September 1994, Eureka suspended and transferred Carlos. Later, while Carlos was still employed by Eureka, in March 1995, the company received further complaints about Carlos engaging in sexual harassment. Eureka also learned that Carlos was not performing his duties properly. Purportedly based on all this information, on March 17, 1995, Eureka discharged Carlos. Carlos claims that his discharge was motivat-

ed not by his alleged sexual harassment or poor work habits, but by Eureka's desire to retaliate against him for exercising his rights to ERISA benefits. Eureka denies this claim.

█ Under ERISA, a participant of an employee benefit plan must establish a prima facie case of discrimination against him for exercising a right granted by the benefit plan. *McGann v. H & H Music Co.,* 946 F.2d 401, 402 (5th Cir.1991). The Plaintiff must show his discharge was motivated by his employer's desire to retaliate against him for exercising such a right or with the attainment of benefits to which he might become entitled. *McGann,* supra at 404. The Plaintiff only needs to show that interference with ERISA rights was the motivating, but not the only, factor in the discharge. *Humphreys v. Bellaire Corp.,* 966 F.2d 1037 (6th Cir.1992). But he must also show that the loss of benefits was more than the incidental result of discharge. *Seaman v. Arvida Realty Sales,* 985 F.2d 543 (11th Cir.1993). Circumstantial evidence may be used to establish the employer's intent. *Toledo v. Ayerst–Wyeth Pharmaceutical, Inc.,* 852 F.Supp. 91, 100 (D.Puerto Rico 1993). Once the participant establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the discharge. If the employer articulates such a legitimate reason, the participant must prove that the reason is a pretext for the discriminatory action. *Toledo, supra* at 100. Specifically, the fact that the Plaintiff was discharged soon after he was injured on the job, reported his injury to his employer, and requested that the injury be reported to the ERISA plan manager, suggests that the Defendant may have discharged the Plaintiff to prevent him from eventually using his medical and disability benefits.

█ In the instant case, even assuming *arguendo* that Carlos has met the elements of a *prima facie* case, he has failed to establish that Eureka's proffered nondiscriminatory reasons for discharging him were merely a pretext. In order to prevail on his claim, Carlos was required to demonstrate that Eureka discharged him with the specific intent of interfering with his ERISA bene-

fits. *Perdue v. Burger King Corp.,* 7 F.3d 1251, 1255 (5th Cir.1993); *Simmons v. Willcox,* 911 F.2d 1077, 1082 (5th Cir.1990). Carlos has failed to point to specific facts which indicate that Eureka's proffered nondiscriminatory reasons for discharging him were merely a pretext. Moreover, the Fifth Circuit has specifically stated that where the only evidence that an employer specifically intended to violate ERISA is the employee's lost opportunity to accrue additional benefits, the employee has not put forth evidence sufficient to separate that intent from the myriad of other possible reasons for which an employer might have discharged him. *Unida v. Levi Strauss & Co.,* 986 F.2d 970, 981 (5th Cir.1993). Consequently, Eureka is entitled to a take nothing judgment on Carlos's § 510 ERISA claim.

It is therefore ORDERED that judgment be, and it is hereby ENTERED in favor of the Defendant, and that the Plaintiff Mario Carlos take nothing by his suit.

It is further ORDERED that the Plaintiff pay the costs of suit herein incurred.