**Gilbert MONTES, Plaintiff,**

v.

**PHELPS DODGE INDUSTRIES, INC. d/b/a Phelps Dodge Copper Products, a/k/a Phelps Dodge Smelting Rod Refining a/k/a Phelps Dodge Mining Company El Paso Operations a/k/a Phelps Dodge Copper Products, and Phelps Dodge Corporation, Defendants.**

**No. EP–05–CA–0053 KC.**

United States District Court, W.D. Texas, El Paso Division.

Sept. 27, 2006.

Colbert N. Coldwell, Guevara, Rebe, Bumann, Coldwell & Reedman, Mike Milligan, Attorney at Law, El Paso, TX, for Plaintiff.

Erica M. Meadough, Jerry L. Mitchell, Kasowitz, Benson, Torres & Friedman L.L.P., Houston, TX, for Defendants.

### ORDER

CARDONE, District Judge.

On this day, the Court considered Defendant's Motion for Summary Judgment ("Motion"). For the reasons set forth herein, Defendant's Motion is **DENIED** in part and **GRANTED** in part.

## I. BACKGROUND

The following background is derived from the parties' Proposed Undisputed Facts and Response to Proposed Undisputed Facts.[1]

Defendants Phelps Dodge Industries, Inc. and Phelps Dodge Corporation (collectively, "Defendants") employed Gilbert Montes ("Plaintiff") for approximately twenty-nine (29) years, from some time in 1974 until March 21, 2003. App. to Defs.' Mot. for Summ. J. Ex. A 9:8–12:20, 20:4–7. During February 2003, Plaintiff served as superintendent of the Customer Technical Assistance Group ("CTAG"), where his responsibilities included supervising three other employees. *Id.* at Ex. A 12:7–13:10, 14:8–17:12. During this time, Kevin Carpenter served as Plaintiff's supervisor. *Id.* at Exs. A 13:11–14:7, F ¶ 2.

On February 12, 2003, Defendants held a meeting during which they informed Plaintiff that the CTAG department would be absorbed into another department and

---

1. At several places in his Response to Defendants' Proposed Undisputed Facts, Plaintiff denies certain Proposed Undisputed Facts and cites to his own affidavit, which was created after Defendants had already served him with their Motion. It is well-settled that a party may not defeat summary judgment and create a genuine issue of material fact by relying on an affidavit that contradicts previous, sworn testimony. *Copeland v. Wasserstein, Perella & Co., Inc.,* 278 F.3d 472, 482, 482 n. 21–22 (5th Cir.2002). Therefore, to the extent this affidavit does so, the Court will not consider it.

that as a result of this reorganization, his position would be eliminated. *Id.* at Ex. F ¶ 3. Defendants also informed John Laage, an engineer in the CTAG department, that his position would be eliminated. *Id.* at Ex. A 16:12–14, 51:14–52:12. Defendants offered Plaintiff and Laage two opportunities: (1) apply for a new position in the Quality Assurance Department, which would be assuming the responsibilities of the old CTAG Department or (2) apply for special unreduced early retirement benefits through the Phelps Dodge Retirement Plan ("Plan"). *Id.* at Exs. A 51:14–52:12, 122:8–18, F ¶ 3.

Karen Hamilton, a woman previously trained and supervised by Plaintiff, managed the Quality Assurance Department. *Id.* at Ex. A 52:7–55:20; 122:8–18. As such, Plaintiff would report directly to Hamilton if he accepted a job with the Quality Assurance Department. *Id.* at Ex. A 52:7–55:20. Hamilton stated that she had never had any serious conflicts with Plaintiff. Plf.'s Resp. to Defs.' Proposed Undisputed Facts, unlabeled deposition of Karen Hamilton 19:7–17.

Plaintiff declined to apply for the Quality Assurance Department. App. to Defs.' Mot. for Summ. J. Ex. A 55:18–20. He offered three reasons for this decision: (1) Defendants had offered him a good early retirement package, (2) a recent heart attack possibly related to work had left him concerned about his health, and (3) he did not feel that he could be a fully effective worker under Hamilton's supervision. *Id.* at Ex. A 52:7–55:20. Plaintiff admits that he did not believe that Hamilton could perform the job as well as he could, and further that he told other employees that he did not want to work under Hamilton's supervision. *Id.* at Exs. A 52:7–55:20, B 58:5–8.

After learning that his position would be eliminated, Plaintiff admits that he deleted between 4,000 and 5,000 computer files from the CTAG directory. *Id.* at Ex. A 22:8–25; 28:6–29:3. However, he denies that he ever had any malicious intent in doing so. *Id.* at Ex. A 99:20–101:14. It had always been part of his job to delete unnecessary and duplicate files, including files containing outdated customer specifications. *Id.* at Ex. A 26:17–29:19; 31:23–33:11. He created two sets of back-up disks containing some of the deleted files, keeping one and turning the other, less complete set over to Defendants. *Id.* at Ex. A 28:21–29:3, 39:20–40:21, 42:17–45:20. He never thought that the files would be permanently deleted from the company's computer network, or K-drive. *Id.* at Ex. A 23:24–29:19. In fact, Defendants were able to recover all files Plaintiff had deleted. *Id.* at Ex. C5.

On March 7, 2003, Carmen Hernandez reported Plaintiff's deletion of files to Hamilton. Plf.'s Resp. to Defs.' Proposed Undisputed Facts ¶ 41. Consequently, Defendants began an investigation into all files that had been deleted from the CTAG folder since February 12, 2003. *Id.* at ¶ 43. This investigation revealed that more than 4,200 files had been deleted. App. to Defs.' Mot. for Summ. J. Ex. G ¶ 5.

On March 14, 2003, Charles Rising, the Director of Human Resources, called John Laage into a meeting and suspended him pending an investigation into a claim that he had deleted computer files. App. to Defs.' Mot. for Summ. J. Ex. B 22:20–25:5. Laage admitted to deleting emails and personal items on his computer only. *Id.* He claims that he was careful not to delete files while in "synchronization mode." *Id.*

On March 14, 2003, Rising also called Plaintiff into his office for a meeting. *Id.* at Ex. A 66:8–15. When Plaintiff entered Rising's office, Plaintiff placed a Payment Election Form for special, unreduced early retirement benefits on Rising's desk. *Id.* Plaintiff admits that this attempt to submit the Payment Election Form did not con-

form to the instructions, which state that the form should be completed, signed, and sent to a listed address with the heading, "Attention: Retirement Department." *Id.* at Ex. A 68:17–69:2. However, Plaintiff explains that Rising implied to him that should Plaintiff choose to accept the special, unreduced early retirement benefits, Plaintiff should submit the form directly to Rising. *Id.* at Ex. A 70:17–71:6.

Instead of accepting this Payment Election Form, Rising informed Plaintiff that someone had accused him of maliciously deleting files, and that the company would need to investigate these accusations before allowing him to accept the early retirement package. *Id.* at Ex. A 66:16–67:3. Rising suspended Plaintiff pending the investigation. *Id.* at Ex. A 87:24–88:14. When Plaintiff left Rising's office, he took the Payment Election Form with him. *Id.* at Ex. A 67:4–7.

As a result of the investigation, Defendants deemed a sampling of the files deleted by Plaintiff as necessary for their ongoing business. *Id.* at Exs. C3, F. These files included historical records of customer specifications, data history with customers, and product design experiments. *Id.* at Ex. F. On March 21, 2003, Defendants terminated Plaintiff. *Id.* at Exs. C1, C3, F. Defendants' stated reasons for his termination were: (1) deleting company files and (2) violating the company's Code of Ethics. *Id.* at Ex. C5. In an email communication between Rising and Ken Watkins, Rising explained these reasons, recommended Plaintiff's termination, and added the following:

> We do have some limited exposure. He is no longer eligible for the special 70/80 retirement and severance. He is eligible for early retirement. The difference is around $60,000.

*Id.*

By contrast, Laage was only given a written reprimand. *Id.* at Exs. B 22:20–28:3, C5. Defendants stated reason for this decision was that the files deleted by Laage were not deemed necessary to its ongoing business. *Id.* at Exs. B 22:20–28:3, C5.

On September 15, 2003, Defendants received a letter from Plaintiff's attorney purporting to be a formal claim for early retirement benefits. *Id.* at Ex. E. Defendants denied this claim on October 7, 2003, claiming that Plaintiff did not qualify for special, unreduced early retirement benefits under the Plan because he did not meet the requirements specified under section 3.3(a)(1) and 3.3(a)(4). *Id.* at Exs. E, E1. In relevant part, the Plan states:

> 3.3 Special Early Retirement
>
> (a) Eligibility. A Participant shall be entitled to the applicable Special Early Retirement Benefits described in Section 4.3 (Special Early Retirement Benefit) if:
>
> (1) He is terminated (A) in connection with the closing of a plant or facility operated by the Employers or an Affiliate or (B) as a result of the elimination of a position by the Employers or an Affiliate; and
>
> (4) He executes a general release of claims in favor of the Company and all Affiliates in such form and containing such terms and conditions as the Company may require, including, but not limited to, the release of any and all claims relating to his employment with the Employers or any Affiliate and the termination of said employment to the extent allowed by the applicable law.

*Id.* at Exs. E, E2.

Plaintiff appealed the denial of benefits to the Retirement Claim Appeals Subcommittee ("RCAS"). *Id.* at Ex. E. The RCAS denied this claim, finding: (1) there was no executed Payment Election Form for special, unreduced early retirement

benefits, (2) there was no executed General Release of claims in favor of Defendants, (3) there was no properly completed and approved Request/Approval for special unreduced early retirement benefits, and (4) the human resources information system job summary indicated that Plaintiff had been terminated for performance. *Id.*

Plaintiff appealed this decision to the Benefits Administration Committee ("BAC"). *Id.* at Exs. E, E1. The BAC affirmed the decision that Plaintiff was not eligible for special early retirement benefits because: (1) he was terminated for cause and (2) he never executed a General Release. *Id.*

Plaintiff admits that he never executed a General Release in favor of Phelps Dodge, but claims that he was never given the opportunity to do so. *Id.* at Ex. A 62:25–63:5; 65:17–74:19.

On June 29, 2003, Plaintiff submitted an application for Election of Benefits for reduced early retirement. *Id.* at Ex. E. He currently receives $1,381.61 per month in reduced early retirement benefits. *Id.*

On January 14, 2005, Plaintiff filed the instant lawsuit against Defendants in state court. On February 22, 2005, Defendants removed the instant case to federal court. On September 12, 2005, this Court dismissed Plaintiff's state law claims, leaving only two claims brought pursuant to the Employee Retirement Income Security Act (ERISA): (1) an interference claim under 29 U.S.C. § 1140 and (2) a claim for abuse of discretion under 29 U.S.C. § 1132.

## II. DISCUSSION

### A. Standard

A summary judgment movant must show by affidavit or other evidence that there is no genuine issue regarding any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990). Once the movant carries the initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston,* 922 F.2d 1183, 1187 (5th Cir.1991).

Summary judgment is required if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250n, 106 S.Ct. 2505, 91 L.Ed.2d 202.4 (1986).

### B. Objections

Throughout their pleadings, the parties object to the introduction of several pieces of evidence. Neither party at any point, however, filed a motion to strike. Plaintiff provided a small amount of case law in support of a few of his objections, but failed to apply that case law to the facts

and provide this Court with any argument or analysis supporting his objections. Plaintiff further disobeyed this Court's Standing Order Governing Motions for Summary Judgment by including argument in his response to Defendant's Proposed Undisputed Facts, rather than simply stating whether each fact is admitted or denied. Defendants provided case law and argument in support of their position, but failed to do so in a motion requesting this Court to strike the evidence.[2] Because of this lack of organization, the scarcity of supporting authority, and the failure to present these disputes in an appropriate manner before this Court, this Court need not burden itself with addressing these objections, but will nonetheless do so in order to clarify the record.

This Court will, consistent with the standard, view all evidence and reasonable inferences therefrom in a light most favorable to the non-moving party. *Doe v. San Antonio Indep. Sch. Dist.*, 2005 U.S. Dist. LEXIS 3196, at *6 (W.D.Tex. Feb. 3, 2005). In the future, however, this Court expects all parties to file any necessary and appropriate motions with respect to the admissibility of evidence for purposes of summary judgment.

### 1. Objection 1

In his Response to Defendant's Motion, Plaintiff indicates that he objected to several questions that Defendants asked during his deposition. Plf.'s Resp. to Def.'s

Mot. 5. Specifically, Plaintiff refers this Court to Defendant's Exhibit A at page 145, lines 2, 8, and 15, and at page 146, lines 3 and 8 where Plaintiff's Counsel Mike Milligan declared, "Objection. Form." *Id.* Plaintiff failed to more fully elaborate on these objections or why this Court should sustain them.

Defendants make no response to these objections, either during the deposition itself or in their "Reply to Plaintiff's Response to Defendants' Proposed Undisputed Facts," where they seem to have addressed other evidentiary issues.

The Court will consider the evidence for purposes of summary judgment.

### 2. Objection 2

In his Response to Defendant's Proposed Undisputed Facts, Plaintiff objects to: 1) Proposed Undisputed Fact 22: "Montes ultimately deleted thousands of files from the CTAG directory," Plf.'s Resp. to Def.'s Proposed Undisputed Facts 5–6; 2) Proposed Undisputed Fact 66: "On or about March 20, 2003, Plaintiff was provided a computer and given the opportunity to try to retrieve 15 of the files he had deleted but claimed were 'duplicative' or 'redundant,'" *id.* at 14; 3) Proposed Undisputed Fact 68: "At the March 20, 2003 meeting, Montes changed his story and offered new reasons why he had deleted files," *id.* at 15; and 4) Proposed Undisputed Fact 71: "At the March 20, 2003

**2.** This Court will acknowledge Defendants' statement that they included their "Responses to Plaintiff's Objections to Defendant's Summary Judgment Evidence" in their "Reply to Plaintiff's Response to Defendants' Proposed Undisputed Facts" because the Plaintiff included his objections in his "Response to Defendants' Proposed Undisputed Facts." Nonetheless, just because one party chooses to deviate from traditional motion practice and this Court's standing orders by including extraneous information in their pleadings

does not mean that a responding party should follow suit. Moreover, in Defendants' Prayer to their "Reply to Plaintiff's Response to Defendants' Proposed Undisputed Facts" they request that this Court grant their Motion to Strike. Though a Motion to Strike would have been the appropriate method to raise all of Defendants' objections, as well as Plaintiff's, the record does not reflect that any such motion was filed by either party. A subsection within a pleading is insufficient to constitute a motion.

meeting, Plaintiff claimed that he destroyed a directory titled 'PDMW/rod/CTAG team' because it was confidential," *id.* at 16. Plaintiff objects to these Proposed Undisputed Facts on the basis that they are "supported only by a self-serving, conclusory hearsay statement which does not qualify under the business records exception." *Id.* Plaintiff argues that Defendants prepared Defendants' Exhibit C5[3] with litigation in mind. *Id.* While Plaintiff provides a string cite to three cases, he provides absolutely no evaluation of these cases and/or legal argument in support of his position. Instead, he relies only upon the conclusory statement cited above.

Defendants first note that although Plaintiff objects to Defendants' Exhibit C5, he relies upon this Exhibit himself in his Response to Defendant's Motion. Def.'s Reply to Plf.'s Resp. to Def.'s Proposed Undisputed Facts ¶ 1; Plf.'s Resp. to Def.'s Mot. ¶ 5. Defendants next argue that the document falls within the business records exception to the hearsay rule because it was prepared in the regular course of business, not in anticipation of litigation. Def.'s Reply to Plf.'s Resp. to Def.'s Proposed Undisputed Facts ¶¶ 1–8.

■ Federal Rule of Evidence 803(6) provides a hearsay exception whereby records of regularly conducted activity may be admitted into evidence. FED.R.EVID. 803(6). In order to be admissible under this business records exception, the statement must meet the following elements: 1) the document was made at or near the time of the matters recorded therein, 2) the document was prepared by, or from information transmitted by a person with knowledge of the matters recorded, 3) the person who prepared the document was engaged in a regularly conducted business

activity, 4) it was the regular practice of the business to make such documents, and 5) the document was retained and kept in the course of some regularly conducted business activity. *Wilander v. McDermott Int'l, Inc.,* 887 F.2d 88, 91 (5th Cir.1989). Moreover, all of these elements must be "shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification." FED.R.EVID. 803(6). "Whether evidence is admissible under Rule 803(6) is 'chiefly a matter of trustworthiness.'" *United States v. Wells,* 262 F.3d 455, 459–60 (5th Cir.2001).

■ In this case, the document at issue was accompanied by an affidavit from its custodian, Lucina Acuna, and based upon the record this Court is satisfied that it meets the business records exception. Moreover, if the business records exception is chiefly a matter of trustworthiness, then there is no better proof of that than the fact that Plaintiff himself relied upon the record in his Response to Defendant's Motion. Finally, Defendant has aptly distinguished each case that was summarily cited by Plaintiff in support of his position. Accordingly, the Court will consider the evidence (i.e., Exhibit C5) for purposes of summary judgment, except for the fourth and fifth paragraphs under the first subheading. The Court will deem Plaintiff's objection as a denial of this Proposed Undisputed Fact.

### 3. Objection 3

In his Response to Defendant's Proposed Undisputed Facts, Plaintiff objects to Proposed Undisputed Fact 25: "Montes took the first, more complete, set of disks home with him, even though he knew he

---

**3.** This Court presumes the objection is to Exhibit C5 and not Exhibit G, which was also referenced by Defendants as a source for this Proposed Undisputed Fact, because Plaintiff makes reference to Exhibit C5's contents.

was leaving the company." Plf.'s Resp. to Def.'s Proposed Undisputed Facts 6. Plaintiff argues that this fact is irrelevant because Defendants have not argued that they terminated Montes for taking the records home. *Id.*

Defendants do not respond to this argument.

The Court will consider the evidence for purposes of summary judgment. The Court will deem Plaintiff's objection as a denial of this Proposed Undisputed Fact.

### 4. Objection 4

In his Response to Defendant's Proposed Undisputed Facts, Plaintiff objects to Defendants' evidence supporting Proposed Undisputed Fact 40. Plf.'s Resp. to Def.'s Proposed Undisputed Facts 9. Plaintiff argues that the evidence supporting this proposed undisputed fact is an unsworn affidavit containing self-serving, "litigation related purpose," third-hand hearsay. *Id.* The exhibit at issue is Defendants' Exhibit C2.

Defendants do not respond.

As a preliminary matter, this Court notes that the case law cited by Plaintiff in support of this argument is the exact same case law that he cited in support of Objection 2. It relates to the business records exception and Plaintiff has not shown how it is relevant to the instant objection. However, this Court will not consider the evidence for purposes of summary judgment as it contains impermissible hearsay.

### 5. Objection 5

In his Response to Defendant's Proposed Undisputed Facts, Plaintiff objects to Proposed Undisputed Fact 62: "A detailed review was conducted of a sampling of 45 of the deleted files, and it was determined that at least 15 of the 45 sampled deleted files were important and necessary for the continuing business operations of the company." Plf.'s Resp. to Def.'s Proposed Undisputed Facts 13. Plaintiff argues that the affidavit "says nothing about 'a sampling of 45 of the deleted files,' showing 'that at least 15 . . . were important and necessary,'" only that "'a number of those files were important for ongoing business.'" *Id.*

Defendants do not respond.

Plaintiff cites absolutely no authority for the proposition that this information is inadmissible. The Court will consider the evidence for purposes of summary judgment. The Court will deem Plaintiff's objection as a denial of this Proposed Undisputed Fact.

### 6. Objection 6

In his Response to Defendant's Proposed Undisputed Facts, Plaintiff objects to Proposed Undisputed Fact 63: "It would have been difficult for Karen Hamilton to perform her job as Quality Assurance Manager if the files Plaintiff deleted had not been recovered," and Proposed Undisputed Fact 64: "Ms. Hamilton would have had to rebuild the CTAG department from scratch." Plf.'s Resp. to Def.'s Proposed Undisputed Facts 14. Plaintiff argues that the Carpenter affidavit upon which these facts are based is wholly conclusory, but provides no case law or argument in support of this position. *Id.* The Carpenter affidavit is Defendants' Exhibit F.

Defendants argue that the Carpenter affidavit is admissible because it does not simply state conclusions. Defs.' Reply to Plf.'s Resp. to Defs.' Proposed Undisputed Facts ¶ 9. Rather, it demonstrates the facts upon which Carpenter's conclusions are based by describing the types of files that were deleted and thereafter drawing the conclusion that they were important. *Id.* at ¶¶ 9–10.

The Court will consider the evidence for purposes of summary judgment. The Court will deem Plaintiff's objection as a denial of these Proposed Undisputed Facts.

### 7. Objection 7

In his Response to Defendant's Proposed Undisputed Facts, Plaintiff objects to Proposed Undisputed Fact 76: "Depriving Plaintiff of special early retirement benefits was not a factor in or motivation for Mr. Carpenter's decision to terminate Plaintiff." Plf.'s Resp. to Def.'s Proposed Undisputed Facts 17. Plaintiff argues that this undisputed fact was not proposed in good faith and that Defendants know that it is in dispute. *Id.*

Defendants do not respond.

The Court does now know in what way Plaintiff attempts to "object" to this Proposed Undisputed Fact, but will construe this "objection" as a denial.

### 8. Objection 8

In their Reply to Plaintiff's Response to Defendants' Proposed Undisputed Facts, Defendants object to Exhibits 2 through 18, attached to the Declaration of Colbert Coldwell, because they contain highlighted sections that were not present in the original copies produced to Plaintiff. Defs.' Reply to Plf.'s Resp. to Defs.' Proposed Undisputed Facts ¶ 14.

Plaintiff does not respond.

 Affidavits in support of or opposition to summary judgment must set forth facts that would be admissible into evidence at trial. FED.R.CIV.P. 56(e); *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Evidence that was not produced during discovery may not be admitted at trial unless the error is harmless. FED.R.CIV.P. 37; *see also, e.g., Guzman v. Abbott Lab.*, 61 F.Supp.2d 784, 786 (N.D.Ill.1999) (excluding evidence); *J. Aron & Co. V. Cargill Marine Terminal, Inc.*, 1998 WL 136566, **1–2, 1998 U.S. Dist. LEXIS 3671, at *2–4 (E.D.La. Mar. 17, 1998) (excluding evidence); *C.R. Bard, Inc. v. M3 Sys., Inc.*, 1994 WL 270252, **3–4, 1994 U.S. Dist. LEXIS 8104, at *10–13 (N.D. Ill. June 14, 1994) (refusing to exclude evidence because error was harmless).

In the instant case, the Coldwell Declaration was accompanied by several pieces of evidence not produced during discovery. Moreover, Plaintiff fails to argue how this omission is harmless. Accordingly, this Court will *not consider the evidence for* purposes of summary judgment.

### 9. Objection 9

In their Reply to Plaintiff's Response to Defendants' Proposed Undisputed Facts, Defendants object to Plaintiff's entire Response to Propose Undisputed Facts because it contains self-serving argument, objections instead of admissions and/or denials, and does not support the denials with citations to the record. Defs.' Reply to Plf.'s Resp. to Defs.' Proposed Undisputed Facts ¶¶ 7–8. Defendants also object to Plaintiff's Proposed Disputed Issues of Material Fact. *Id.* at ¶¶ 20–22.

Plaintiff does not respond.

This Court does not disagree that Plaintiff failed to fully comply with this Court's order as more fully detailed in the introduction to this section II.B., but for the reasons set forth above, will nonetheless consider the evidence for purposes of summary judgment.

### C. Plaintiff's Section 510 Interference Claim

Defendants argue that summary judgment is appropriate as to Plaintiff's section 510 claim because Plaintiff cannot establish a prima facie case of interference with an ERISA right. Defs.' Mot. for Summ. J. ¶ 13. Specifically, Defendants argue that Plaintiff admits that he has no evidence of

Defendants' specific intent to interfere with Plaintiff's ERISA rights and that Plaintiff cannot show interference with a right to which he is entitled because he did not submit an Election of Benefits form. *Id.* ¶¶ 13–14. Further, Defendants argue that even if Plaintiff is able to establish a prima facie case of interference, he cannot show that Defendants' legitimate, non-discriminatory reason for terminating him was pretextual. *Id.* ¶¶ 15–18. Defendants argue that Plaintiff cannot establish pretext by pointing to dissimilar treatment received by Laage, another employee who deleted files but was reprimanded rather than terminated, because Laage deleted fewer and less important files. *Id.* ¶ 18.

Plaintiff responds by arguing that the temporal proximity between his claim for ERISA rights and his termination, Defendants' failure to allow him to complete an Election of Benefits form, and an email communication which specifically mentions Defendants' potential liability for terminating Plaintiff, is sufficient to establish a prima facie case of interference. Plf.'s Resp. to Mot. for Summ. J. ¶ 9. Plaintiff next responds by arguing that he successfully established that Defendants' legitimate, non-discriminatory reason for the termination was pretext based upon the proximity in time between his exercise of ERISA rights and the termination. *Id.* ¶ 13.

■ Section 510 of the Employee Retirement Income Security Act (ERISA) prohibits an employer from both retaliating against an employee for exercising an ERISA right and preventing an employee from attaining benefits to which he would become entitled under a pension benefit plan. 29 U.S.C. § 1140; *Stafford v. True Temper Sports,* 123 F.3d 291, 295 (5th Cir.1997); *Clark v. Resistoflex Co.,* 854 F.2d 762, 770 (5th Cir.1988). To recover under section 510, the plaintiff must make a prima facie showing of the following: (1) adverse employer action (2) taken for the purpose of interfering with the attainment of (3) any right to which the employee is entitled. *Bodine v. Employers Cas. Co.,* 352 F.3d 245, 250 (5th Cir.2003). The plaintiff need not show that the sole reason for his termination was to interfere with pension rights, but must nonetheless establish that the defendant discriminated against him with the specific intent to interfere with his ERISA rights. *Clark,* 854 F.2d at 770; *see Simmons v. Willcox,* 911 F.2d 1077, 1082 (5th Cir.1990); *Carlos v. White Consol. Indus. Inc.,* 934 F.Supp. 227, 232 (W.D.Tex.1996) (citing *McGann v. H & H Music Co.,* 946 F.2d 401, 404 (5th Cir.1991)); *see also Bodine,* 352 F.3d at 250 ("[T]here must be some unscrupulous conduct or intentional act (such as harassment or nefarious inducement to stay) on the part of the employer."). In other words, the plaintiff need only show that interference with ERISA rights was a motivating factor for the adverse action, rather than the sole factor. *Stafford,* 123 F.3d at 295; *Carlos,* 934 F.Supp. at 232.

■ Circumstantial evidence may be used to establish the employer's specific intent. *Stafford,* 123 F.3d at 295; *Carlos,* 934 F.Supp. at 232. For example, courts have found that the proximity between a claim for ERISA benefits and an adverse action, in combination with other evidence, may be sufficient to show that the defendant's legitimate, non-discriminatory reason for the adverse action is a mere pretext for preventing the plaintiff from receiving ERISA benefits. *Olitsky v. Spencer Gifts,* 964 F.2d 1471, 1478 (5th Cir.1992) (holding there was no clear error in the judge's inference that defendant intended to deprive plaintiff of his benefits, based on the proximity between date of firing and date of benefit vesting); *Kirby v. SBC Serv.,* 2006 WL 154914, *8, 2006 U.S. Dist. LEXIS 2062, at *28 (Jan.

20, 2006) ("[A]lthough proximity of time is a factor, it is not necessarily the determining factor."); *Kirby v. SBC Serv., Inc.*, 391 F.Supp.2d 445, 456 n. 10 (N.D.Tex.2005) ("[P]roximity of time may be a factor, [but] it is not the determining factor."); *see also Nero v. Indus. Molding Corp.*, 167 F.3d 921, 928 (5th Cir.1999) (finding proximity between plaintiff's termination and claim for benefits, in combination with evidence that the decision to terminate plaintiff was not made before the claim for benefits, sufficient to establish specific intent). *But cf. Kirby*, 391 F.Supp.2d at 455–56 (finding that plaintiff failed to establish specific intent when he produced evidence that defendant saved money by terminating plaintiff close to his retirement date, plaintiff's replacement would not be eligible for ERISA benefits, and another employee was not terminated for violating the same company policies). However, speculative allegations that the defendant "has something to gain" by taking adverse action against an employee are insufficient to create a genuine issue of material fact precluding summary judgment. *Simmons*, 911 F.2d at 1082. The plaintiff must show that the loss of benefits was more than an incidental loss resulting from the adverse action. *Stafford*, 123 F.3d at 295; *Clark*, 854 F.2d at 771 ("[W]here the only evidence that an employer specifically intended to violate ERISA is the employee's lost opportunity to accrue additional benefits, the employee has not put forth evidence sufficient to separate that intent from the myriad of other possible reasons for which an employer might have discharged him.").

■ Once the plaintiff establishes a prima facie case under section 510, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action. *Stafford*, 123 F.3d at 295; *Carlos*, 934 F.Supp. at 232. If the defendant articulates such a reason, the burden then shifts back to the plaintiff to prove that the defendant's legitimate, non-discriminatory reason is merely a pretext for the denial of ERISA benefits. *Stafford*, 123 F.3d at 295; *Carlos*, 934 F.Supp. at 232. As with specific intent, courts have found that the proximity between a claim for ERISA benefits and an adverse action may be sufficient to show that the defendant's legitimate, non-discriminatory reason for the adverse action is a mere pretext for preventing the plaintiff from receiving ERISA benefits. *Carlos*, 934 F.Supp. at 232 ("[T]he fact that the Plaintiff was discharged soon after he was injured on the job, reported his injury to his employer, and requested that the injury be reported to the ERISA plan manager, suggests that the Defendant may have discharged the Plaintiff to prevent him from eventually using his medical and disability benefits."). Courts also consider whether similarly situated employees were treated differently. *See, e.g., Kirby*, 2006 WL 154914, **6–7, 2006 U.S. Dist. LEXIS 2062, at *22 (discussing disparate treatment evidence within the context of a section 510 claim).

In the instant case, it is undisputed that Defendants offered Plaintiff the opportunity to retire and take advantage of special unreduced retirement benefits. It is also undisputed that Defendants terminated Plaintiff. Therefore, the key issue is whether or not Plaintiff has provided sufficient evidence that Defendants terminated him for the purpose of interfering with his attainment of retirement benefits. *Bodine*, 352 F.3d at 250. In other words, the key issue is whether or not there is sufficient evidence to create a genuine issue of material fact as to whether Defendants acted with the requisite specific intent. *Id.; Clark*, 854 F.2d at 770.

■ Plaintiff admits that he deleted between 4,000 and 5,000 files after he learned that his position would be elimi-

nated, but that deleting old files and "cleaning up" company records had always been a part of his job description. Although much was made of the fact that Plaintiff deleted files from Defendants' computer network, or K-drive, Plaintiff claims that he never thought that the files would be permanently deleted from the K-drive. As it turns out, the company was, in fact, able to recover all files Plaintiff deleted. Though they noted that all files were recovered, Defendants still recommended Plaintiff's termination and did so with the recognition that they would no longer owe Plaintiff the special early retirement benefits that they had previously offered to him, and further with the recognition that they may have liability for such action. *See* App. to Defs.' *Mot. for Summ. J.* Ex. C5 ("We do have some limited exposure."). Finally, the record reflects that shortly after Defendants offered Plaintiff the opportunity to accept early retirement benefits, and on the very day Plaintiff attempted to accept those early retirement benefits, Defendants terminated him. This proximity in time between Plaintiff's claim for ERISA benefits and his termination, in combination with the rest of Plaintiff's circumstantial evidence, is sufficient to create an issue of fact as to whether interference with Plaintiff's ERISA rights was at least a motivating factor in the decision to terminate him. As such, for purposes of a motion for summary judgment, Plaintiff has succeeded in establishing a prima facie case of interference.

 Defendants succeed in rebutting this prima facie case by providing a legitimate, non-discriminatory reason for Plaintiff's termination—namely, that they terminated Plaintiff for his unauthorized and malicious deletion of files. Therefore, the burden falls upon the Plaintiff to show that this articulated reason is a mere pretext for preventing him from receiving ERISA rights.

As stated above, Plaintiff admits that he deleted numerous files, but that deletion of files was one of his job responsibilities. If this is true, and as this is a motion for summary judgment the court views all evidence in a light most favorable to the non-moving party, then Defendants' stated reason for the termination would indeed be a pretext for discrimination. Moreover, as stated above, Defendants terminated Plaintiff in extreme proximity to the date upon which he was set to and attempted to claim his early retirement benefits, a fact which has been considered sufficient to show that a defendant's articulated reason for an adverse action is mere pretext. *See Carlos,* 934 F.Supp. at 232. Finally, Plaintiff has provided evidence that Defendants merely reprimanded, rather than terminated, another employee who also deleted files. While Defendants attempt to distinguish Laage's case by arguing that the files he deleted were not "deemed important" by the company, Defendants provide little evidence other than self-made affidavits to that effect. As such, there is at least an issue of fact as to whether Defendants treated a similarly situated employee differently than they treated Plaintiff. *See Kirby,* 2006 WL 15491, \*\*6–7, 2006 U.S. Dist. LEXIS 2062, at \*22 (finding disparate treatment of a similarly situated employee relevant in establishing pretext).

 Viewing the evidence in a light most favorable to Plaintiff, Plaintiff has succeeded in creating a genuine issue of material fact, both as to whether Defendants acted with the requisite intent and whether Defendants stated reason for the termination was mere pretext. Accordingly, Defendants' Motion as to the Section 510 interference claim is denied.

**D. Plaintiff's Section 502 Abuse of Discretion Claim**

Defendants argue that summary judgment is appropriate as to Plaintiff's abuse

of discretion claim because Defendants properly interpreted section 3.3 of the Plan. Defs.' Mot. for Summ. J. ¶ 6. Defendants argue that section 3.3(a) sets forth the eligibility requirements for receipt of special early retirement benefits and that Plaintiff did not meet two of them. *Id.* Specifically, Defendants argue that (1) Plaintiff was terminated for cause, rather than as a result of plant closing or the elimination of his position and (2) he never executed a General Release. *Id.*

Plaintiff's four paragraph response to Defendants' arguments is unclear and fails to address the arguments made by Defendants. First, Plaintiff states that a basic conflict of interest exists in this case because Defendants both administer the Plan and fund it. Plf.'s Resp. to Mot. for Summ. J. ¶ 15. Plaintiff states that "[c]onflict of interest, and also procedural irregularity, are revealed by all of the additional evidence set out in response to Defendants' proposed undisputed facts 81 through 93 and in the Coldwell Declaration and 18 documents attached thereto," but does not proceed to cite any case law or analyze the evidence in order to illustrate why a conflict exists. *Id.* Plaintiff then states that "there is no reason at the summary judgment stage that the standard of review will be abuse of discretion, sliding scale, or some combination thereof"—a statement inconsistent with case law, cited by the Plaintiff himself, which illustrates that the standard will either be straightforward abuse of discretion or sliding scale abuse of discretion. *Id.* Finally, without citing to or discussing any case law or evidence, Plaintiff makes the following statement:

> Incredibly, the Plan is telling this Court that it has the 'discretion' to allow the employer, a closely related corporate entity, to control the Plan's benefit determination. The only reason for the Plan to consider Mr. Montes' innocence of the charges against him irrelevant is that it

considers only the employer's determination of guilt, instead of deciding whether Mr. Montes was terminated, in fact, because of job elimination. The Plan's second reason, failure of Mr. Montes to execute the general release, flies right in the face of Plan language requiring the employer to prescribe the terms of the release and deliver it to Mr. Montes.

*Id.* at ¶ 16.

Courts review an ERISA benefit plan administrator's interpretation or application of the plan, including a denial of benefits, de novo unless the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan. *Aboul–Fetouh v. Employee Benefits Comm.*, 245 F.3d 465, 471–72 (5th Cir. 2001). In cases where a benefit plan provides the administrator with discretionary authority to determine eligibility for benefits or construe the terms of the plan, courts review the administrator's denial of benefits for abuse of discretion. *Id.* at 472; *see Gosselink v. Am. Tel. & Telegraph, Inc.*, 272 F.3d 722, 726 (5th Cir. 2001); *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 608 (5th Cir.1998); *Spacek v. Maritime Ass'n*, 134 F.3d 283, 292 (5th Cir.1998). In all cases, eligibility for benefits under an ERISA plan is governed first and foremost by the plain meaning of the plan language. *Gosselink*, 272 F.3d at 726. The Fifth Circuit, however, also applies a two-part test when reviewing a plan administrator's denial of benefits. *Gosselink*, 272 F.3d at 726.

According to this two-part test, the court must first determine whether the administrator's interpretation of the plan is legally correct. *Aboul–Fetouh*, 245 F.3d at 472; *Gosselink*, 272 F.3d at 726; *Tolson*, 141 F.3d at 608. In making this determination, the court must consider the

following three factors: (1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan. *Gosselink,* 272 F.3d at 726. If the court determines that the administrator's interpretation of the plan is legally correct, then the interpretation and denial of benefits will be upheld because there cannot have been an abuse of discretion. *Aboul–Fetouh,* 245 F.3d at 472; *Spacek,* 134 F.3d at 292.

In the event the court determines that an administrator's interpretation of the plan is not legally correct, the court must then determine whether the administrator's decision was an abuse of discretion. *Aboul–Fetouh,* 245 F.3d at 472; *Gosselink,* 272 F.3d at 726; *Tolson,* 141 F.3d at 608. In making this determination, the court must consider three factors: (1) the internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith. *Gosselink,* 272 F.3d at 726. "[I]f an administrator interprets an ERISA plan in a manner that directly contradicts the plain meaning of the plan language, the administrator has abused his discretion even if there is neither evidence of bad faith nor of a violation of any relevant administrative regulations." *Id.* at 726.

In cases where the plan participant shows that the plan fiduciary has a conflict of interest, the Fifth Circuit applies a sliding scale to this two-part test. *Ellis v. Liberty Life Assurance Co. of Boston,* 394 F.3d 262, 270 (5th Cir.2005). Under this sliding scale, " '[t]he greater the evidence of conflict on the part of the administrator, the less deferential our

abuse of discretion standard will be.' " *Id.* In other words, the degree to which a court will abrogate its deference to the plan administrator will depend on the extent to which the participant succeeds in substantiating its claims that there is, in fact, a conflict of interest. *Id.; see also Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (holding that a conflict of interest must be weighed as a factor in determining whether there is an abuse of discretion).

As an initial matter, the Phelps Dodge Corporation Plan Benefits Administration Committee is vested with discretionary authority under section 7.2 of the Plan.App. to Defs.' Mot. for Summ. J. Ex. E2 at 63. Moreover, although Plaintiff states that a conflict of interest exists in this case, he provides absolutely no case law or argument in support of his position. Because the degree to which a court will abrogate its deference to the plan administrator depends on the extent to which a participant succeeds in substantiating his claims that there is a conflict of interest, and Plaintiff has made no effort make such a showing here, this Court will not abrogate any deference in applying the two-part test to Defendants' denial of benefits. *Bruch,* 489 U.S. at 115, 109 S.Ct. 948, *Ellis,* 394 F.3d at 270. Having determined that the relevant standard is abuse of discretion, this Court will next apply the two-prong test.

As stated above, in determining whether or not an administrator's interpretation of the plan is legally correct, the Court must consider three factors. *Gosselink,* 272 F.3d at 726. In the instant case, the first factor, whether the administrator has given the plan a uniform construction, is neutral because neither party has presented any evidence that the applicable provisions of the plan have been interpreted in claims like those brought by

Plaintiff. *See Tolson,* 141 F.3d at 608 (finding first factor neutral when applicable provision of the plan had not previously been interpreted in claims like those of the plaintiff). The second factor, whether the interpretation is consistent with a fair reading of the Plan, favors Defendants. Section 3.3 of the plan articulates four requirements for early retirement benefits. These include, among others, the requirements that (1) Plaintiff is terminated in connection with the closing of a plant or the elimination of a position and (2) Plaintiff executes a General Release. Though the Plaintiff claims that he was terminated in connection with the closing of the plant, that reason was not the one stated on his termination papers. Moreover, Plaintiff admits that he never executed a General Release in favor of the company. Therefore, a fair reading of the Plan supports Defendants' decision. Finally, neither party has presented any evidence as to the third factor, whether there are any unanticipated costs resulting from different interpretations of the plan, and therefore, it is neutral. In light of these factors, this Court finds that the administrator gave the Plan its correct legal interpretation. Accordingly, there can be no abuse of discretion.

Defendants' Motion as to Plaintiff's Section 502 abuse of discretion claim is granted.

## III. CONCLUSION

Defendant's Motion for Summary Judgment (Doc. No. 54) is **DENIED** in part as to the interference claim and **GRANTED** in part as to the abuse of discretion claim.

**SO ORDERED.**