Kay K. SIMMONS, Plaintiff–Appellant,

v.

Stephen F. WILLCOX, et al., Defendants–Appellees.

Nos. 90–1030, 90–1426
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Sept. 17, 1990.

Rehearing Denied Oct. 30, 1990.

---

Patrick C. Frank, The Fielder Firm, Dallas, Tex., for plaintiff-appellant.

William C. Strock, Dean J. Schaner, Haynes & Boone, Dallas, Tex., for Willcox and American Lung Ass'n of Dallas.

Before GEE, SMITH, and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Plaintiff Kay K. Simmons appeals from a summary judgment dismissing her various claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, on the grounds that she had not pursued available administrative remedies before resorting to litigation and had not demonstrated that the defendants terminated her with the specific intent to deprive her of her pension benefits. Finding no error, we affirm.

## I.

Simmons was employed by defendant American Lung Association of Dallas ("ALAD"), first as a respiratory therapist and later as an assistant executive director, from 1974 until her discharge in 1987. The events leading to Simmons's termination began in August 1986, when she applied for the position of executive director but was rejected in favor of defendant Stephen Willcox. Personality conflicts soon developed between Simmons and Willcox—she was critical of his management style, while he regarded her performance as unsatisfactory and her attitude as insubordinate— and in July 1987, Willcox terminated Simmons, citing her inability to meet deadlines and unwillingness to follow orders.

While employed by ALAD, Simmons had become a participant in an employee benefit plan administered by defendant Mutual Life Insurance Company of New York ("MONY"). Shortly after her termination, Simmons wrote to Willcox to request information regarding the status of her retirement and health benefits. Willcox responded that Simmons should direct her questions to Dr. Dan Zellmer of MONY; Simmons followed that advice by writing to Zellmer on September 8, 1987, and making specific inquiries relating to her accrued annuity, interest on her pension account, benefit calculations, vesting percentages,

and entitlement to a lump sum distribution of benefits.

On several occasions in October 1987, Zellmer met with Simmons to discuss her options under the employee benefit plan. Apparently, however, Zellmer confused Simmons by providing her with inconsistent figures regarding the lump-sum benefit in her pension account; as a result, Simmons wrote to MONY on October 12, acknowledging that Zellmer had answered many of her questions but requesting further information regarding the methods used to calculate her benefits. In a letter dated November 19, MONY responded to Simmons's inquiries and provided her with forms on which to file a claim for benefits.

However, Simmons elected not to file a claim with MONY. Instead, she filed suit in federal district court against numerous defendants,[1] alleging, *inter alia*, (1) that she had been terminated because of her age and sex and in order to prevent the vesting of her pension and (2) that Willcox and MONY had breached their fiduciary duties under ERISA by denying her access to information regarding her benefits. After the parties had completed discovery, the district court granted summary judgment in favor of Willcox, ALAD, ALAT, and ALA, reasoning that Simmons had not stated a claim for age or sex discrimination, that her claims for benefits and breach of fiduciary duty were premature in that she had not pursued available administrative remedies, and that she had failed to produce evidence that Willcox and ALAD had terminated her with the specific intent to deprive her of retirement benefits. Some months later, the court also dismissed MONY and CBS.

On appeal, Simmons contests only the summary judgment in favor of ALAD, Willcox, and MONY on her ERISA claims. Citing the familiar principle that exhaustion of administrative remedies will not be required where an attempt to exhaust would be patently futile, *see, e.g., Hess-*

---

**1.** In addition to Willcox, ALAD, and MONY, Simmons named as defendants two of ALAD's affiliated entities, the American Lung Association ("ALA") and the American Lung Association of Texas ("ALAT"), and Corporate Benefit Systems, Inc. ("CBS"), the company that took over the administration of ALAD's employee benefit plan from MONY after Simmons's termination.

*brook v. Lennon,* 777 F.2d 999, 1003 (5th Cir.1985), Simmons argues that she could not pursue the remedies provided for in ALAD's employee benefit plan because the defendants gave her inconsistent and misleading information regarding the status of her benefits. In addition, Simmons maintains that genuine issues of material fact remained as to whether ALAD and Willcox terminated her in order to interfere with her retirement benefits, and therefore, that the district court erred in granting summary judgment on that claim.

## II.

■ Before reaching the merits of Simmons's case, we must examine the basis of our jurisdiction, on our own motion if necessary. *Mosley v. Cozby,* 813 F.2d 659, 660 (5th Cir.1987).[2] In order to do so, we must first briefly review the procedural history of this appeal.

On December 11, 1989, the district court entered an order granting summary judgment to Willcox, ALAD, ALA, and ALAT, thus leaving MONY and CBS as the only defendants remaining in the case. Without seeking a Fed.R.Civ.P. 54(b) certification from the district court, Simmons filed a notice of appeal (No. 90–1030) on January 10, 1990. Subsequently, in two orders dated March 6 and May 2, 1990, the district court dismissed MONY and CBS from the litigation. Simmons filed a second notice of appeal (No. 90–1426) on June 1 and, shortly thereafter, moved to consolidate the appeals and to adopt the briefs filed in the prior appeal.[3] That unopposed motion was granted on June 15.

The parties agree that the December 11 order was not final and appealable in that it did not adjudicate "the rights and liabilities ... [of] all the parties," *see* Fed.R. Civ.P. 54(b), and, accordingly, that the January 10 notice of appeal was premature. However, they also agree that that order, combined with the two subsequent orders dismissing MONY and CBS, effectively terminated the litigation and, under the rule first announced in *Jetco Elec. Indus., Inc. v. Gardiner,* 473 F.2d 1228 (5th Cir.1973), cured the defect in the earlier appeal.

In *Jetco,* the plaintiff filed a premature notice of appeal from an order dismissing one of three defendants.[4] Several months later, the district court entered an agreed judgment disposing of plaintiff's claims against the two remaining defendants. While recognizing that the notice of appeal did not meet the requirements of rule 54(b), we nevertheless concluded that we had jurisdiction to "consider a premature appeal in those cases where judgment becomes final prior to disposition of the appeal." *Alcorn County, Miss. v. U.S. Interstate Supplies, Inc.,* 731 F.2d 1160, 1166 (5th Cir.1984) (interpreting *Jetco* ).[5]

■ We thus agree with the parties that, under *Jetco* and its progeny, the defect in Simmons's January 10 notice of appeal was cured by the two subsequent orders, which terminated the litigation prior to the disposition of this appeal. Moreover, we conclude that Simmons's June 1 notice of appeal, filed as a precautionary measure after the order dismissing CBS, is sufficient to create appellate jurisdiction over this case even in the absence of the *Jetco* rule.[6] Accordingly, we proceed to evaluate the merits of Simmons's claims.

---

2. We previously asked the parties to address the issue of appellate jurisdiction in their briefs, and they have done so.

3. Presumably, Simmons did so in order to avoid dismissal of her appeal in the event that we found the first notice of appeal to be ineffective.

4. The plaintiff did not seek a rule 54(b) certification from the district court.

5. The *Jetco* rule has been cited and followed in numerous subsequent decisions of this court. E.g., *Levron v. Gulf Int'l Marine, Inc.,* 854 F.2d 777, 779–80 (5th Cir.1988) (per curiam); *Alcom*

*Elec. Exchange, Inc. v. Burgess,* 849 F.2d 964, 966–69 (5th Cir.1988) (criticizing, but continuing to follow, the *Jetco* rule); *Sandidge v. Salen Offshore Drilling Co.,* 764 F.2d 252, 255 (5th Cir.1985); *Tower v. Moss,* 625 F.2d 1161, 1164–65 (5th Cir.1980). *See also Martin v. Campbell,* 692 F.2d 112, 114 (11th Cir.1982) (recognizing *Jetco* as the rule of the former Fifth Circuit and thus binding on the Eleventh Circuit).

6. Although the parties have not called our attention to it in their briefs, we note that the judgment in this case is not contained in a "separate document" as required by Fed.R.Civ.P. 58.

## III.

Simmons first contends that the district court erred in dismissing her claims for benefits and for breach of fiduciary duty on the ground that she failed to exhaust administrative remedies. While acknowledging both the fact that she filed no claim for benefits with MONY and the general rule that no cause of action accrues under ERISA until such an application is actually filed and denied, *see Paris v. Profit Sharing Plan,* 637 F.2d 357, 361 (5th Cir. Feb. 1981), *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981),[7] Simmons nevertheless argues that exhaustion should not be required in her case because the defendants withheld information regarding the status of her benefits.

This allegation, however, finds no support in the record, which instead demonstrates that the defendants were quite forthcoming and cooperative. When Simmons wrote to Willcox shortly after her termination to request information regarding her health and retirement benefits, Willcox referred her to MONY representative Zellmer, who met several times with Simmons to discuss her questions. And when Simmons still was confused after meeting with Zellmer,[8] another MONY representative wrote to her to explain how her benefits were calculated and to provide her with forms on which to file an application for benefits. Accordingly, Simmons has no excuse for her failure to exhaust administrative remedies, and, until she does so, no cause of action for denial of ERISA benefits.

Moreover, we conclude that the district court was correct in subjecting Simmons's breach of fiduciary duty claims to the exhaustion requirement. In *Drinkwater v. Metro. Life Ins. Co.,* 846 F.2d 821, 825 (1st Cir.), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988), the court considered and rejected the plaintiff's argument that he should not be required to exhaust administrative remedies with respect to his breach of fiduciary duty claims because exhaustion in such a case would be a meaningless exercise, requiring the defendant-fiduciary to adjudicate "the legal consequences of its own fraud and breach of contract." Reasoning that any improper denial of benefits also constitutes a breach of fiduciary duty under ERISA, the court concluded that the exhaustion requirement would be rendered meaningless if plaintiffs could avoid it simply by recharacterizing their claims for benefits as claims for breach of fiduciary duty. *Id.* at 826. We find *Drinkwater* to be persuasive and therefore conclude that Simmons must exhaust her administrative remedies before complaining of a breach of fiduciary duty in federal court.[9]

## IV.

Finally, Simmons asserts that the district court erred in granting summary judgment on her claim that Willcox and ALAD terminated her in order to interfere

---

However, we consistently have recognized that the separate document requirement is not jurisdictional and that parties are free to waive it. *See Seiscom Delta Inc. v. Two Westlake Park (In re Seiscom Delta, Inc.),* 857 F.2d 279, 282 (5th Cir.1988) (citing *Bankers Trust Co. v. Mallis,* 435 U.S. 381, 384, 98 S.Ct. 1117, 1120, 55 L.Ed.2d 357 (1978) (per curiam)). Here, neither of the parties has insisted upon a separate document or objected to the lack thereof; accordingly, the separate document rule is not a barrier to our consideration of this appeal.

7. *See also Denton v. First Nat'l Bank,* 765 F.2d 1295, 1303 (5th Cir.1985) (plaintiff must exhaust administrative remedies before filing lawsuit to collect ERISA benefits); *Makar v. Health Care Corp.,* 872 F.2d 80, 82–83 (4th Cir.1989) (same); *Kross v. Western Elec. Co.,* 701 F.2d 1238, 1245

(7th Cir.1983) (same); *Amato v. Bernard,* 618 F.2d 559, 567–68 (9th Cir.1980) (same).

8. On appeal, Simmons maintains that the fact that Zellmer provided her with inconsistent figures somehow prevented her from filing an application for benefits. However, Simmons admitted at her deposition that she would not have filed an application even if Zellmer had given her consistent figures.

9. The foregoing analysis applies to Simmons's statutory claims for breach of fiduciary duty under ERISA. To the extent that Simmons's fiduciary duty claims are premised upon state law, they are, of course, preempted by ERISA. *See* 29 U.S.C. § 1144(a) (ERISA supersedes all state laws insofar as they "relate to any employee benefit plan.").

with her benefits in violation of ERISA.[10] In order to prevail on such a claim, Simmons was required to demonstrate that Willcox and ALAD discharged her with the specific intent of interfering with her ERISA benefits. *Clark v. Resistoflex Co.*, 854 F.2d 762, 770 (5th Cir.1988). However, the record is wholly devoid of any evidence supporting an inference of such an intent on the part of either defendant, and Simmons's speculative allegations that Willcox had something to gain by terminating her employment are insufficient to create a genuine issue of material fact precluding summary judgment. *See id.* at 771.

AFFIRMED.

---

**10.** 29 U.S.C. § 1140 makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against the participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan...."