# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

No. 17-60282

_____

United States Court of Appeals
Fifth Circuit

**FILED**

March 7, 2018

Lyle W. Cayce
Clerk

WANDA C. STRINGER,

      Plaintiff - Appellant

v.

NORTH BOLIVAR CONSOLIDATED SCHOOL DISTRICT; NORTH BOLIVAR CONSOLIDATED SCHOOL DISTRICT BOARD OF TRUSTEES; JOHNNIE VICK, Individually and in His Official Capacity; WILLIAM LUCAS, JR., Individually and in His Official Capacity; GLEN SCOTT, Individually and in His Official Capacity; JACKLON I. HAYWOOD, Individually and in Her Official Capacity; JEFFERICK BUTLER, Individually and in His Official Capacity; JOHN COLEMAN, Individually and in His Official Capacity; WILLIAM CROCKETT, Individually and in His Official Capacity; JOHN DOES 1-10,

      Defendants - Appellees

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

WANDA C. STRINGER,

      Plaintiff - Appellant

v.

MOUND BAYOU PUBLIC SCHOOL DISTRICT; MOUND BAYOU PUBLIC SCHOOL DISTRICT BOARD OF TRUSTEES; WILLIAM CROCKETT, Individually and in His Official Capacity; GLEN SCOTT, Individually and in His Official Capacity; ANITA SMITH, Individually and in Her Official Capacity; SYLVIA COLEMAN, Individually and in Her Official Capacity; EVELINA GEORGE, Individually and in Her Official Capacity; NORTH

No. 17-60282

BOLIVAR CONSOLIDATED SCHOOL DISTRICT; NORTH BOLIVAR CONSOLIDATED SCHOOL DISTRICT BOARD OF TRUSTEES; JOHN DOES 1-10,

Defendants - Appellees

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

WANDA C. STRINGER,

Plaintiff - Appellant

v.

NORTH BOLIVAR CONSOLIDATED SCHOOL DISTRICT; NORTH BOLIVAR CONSOLIDATED SCHOOL DISTRICT BOARD OF TRUSTEES; JOHNNIE VICK, Individually and in His Official Capacity; WILLIAM LUCAS, JR., Individually and in His Official Capacity; GLEN SCOTT, Individually and in His Official Capacity; JACKLON I. HAYWOOD, Individually and in Her Official Capacity; JEFFERICK BUTLER, Individually and in His Official Capacity; ROGERS MORRIS, Individually and in His Official Capacity; WILLIAM CROCKETT, Individually and in His Official Capacity; JOHN DOES 1-10,

Defendants - Appellees

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

WANDA C. STRINGER,

Plaintiff - Appellant

v.

NORTH BOLIVAR CONSOLIDATED SCHOOL DISTRICT; NORTH BOLIVAR CONSOLIDATED SCHOOL DISTRICT BOARD OF TRUSTEES; JOHNNIE VICK, Individually and in His Official Capacity; WILLIAM LUCAS, JR., Individually and in His Official Capacity; GLEN SCOTT, Individually and in His Official Capacity; JACKLON I. HAYWOOD, Individually and in Her Official Capacity; JEFFERICK BUTLER, Individually and in His Official Capacity; ROGERS MORRIS, Individually

No. 17-60282

and in His Official Capacity; WILLIAM CROCKETT, Individually and in His Official Capacity; JOHN DOES 1-10,

Defendants - Appellees

_____

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 4:15-CV-107
USDC No. 4:15-CV-108
USDC No. 4:15-CV-109
USDC No. 4:15-CV-110

_____

Before STEWART, Chief Judge, HAYNES and WILLETT, Circuit Judges.

PER CURIAM:*

Wanda Stringer ("Dr. Stringer") appeals the district court's grant of summary judgment to both North Bolivar Consolidated School District and Mound Bayou Public School District, their Boards of Trustees, and several individual defendants (collectively, "Defendants") on her federal employment discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act ("ADA"). For the reasons explained below, we AFFIRM the district court's dismissal of all claims.

## I. Background

Dr. Stringer served as the principal of John F. Kennedy ("JFK") High School in Mound Bayou, Mississippi, from 2007 to 2014. As principal of JFK High School, she was responsible for overseeing the school's alternative education program and vocational education program, among other things. She alleges that in 2014 she suffered a series of adverse employment actions due to both her sex (female) and disability (advanced glaucoma), and in

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

retaliation for filing discrimination charges with the Equal Employment Opportunity Commission ("EEOC"), culminating in her reassignment to serve as district-wide director of the alternative and vocational schools effective January 2015. Following notification of her reassignment, Dr. Stringer tendered her resignation, which the school board accepted. This lawsuit followed.

The relevant events leading up to Dr. Stringer's resignation began in February 2014 when Dr. Stringer was notified that her contract would not be renewed for the 2014–2015 school year because her administrator's endorsement was set to expire at the end of June. Dr. Stringer filed an EEOC charge on March 10, 2014, alleging that the nonrenewal decision was in retaliation for an earlier EEOC charge filed in February 2013. A few weeks later, on March 31, the Mound Bayou Public School District notified Dr. Stringer that it was withdrawing the notice of nonrenewal and terminating her as principal of JFK High School, pursuant to Mississippi Code § 37-9-59, because of her "failure to obtain the necessary requirements to serve as an administrator for the 2014–2015 school year." Dr. Stringer updated her EEOC charge to allege that the notice of termination was in retaliation for her EEOC charge regarding the notice of nonrenewal. After subsequently renewing her administrator's endorsement, however, Dr. Stringer was offered a new contract to serve as principal of JFK High School for the 2014–2015 school year, which she signed on June 18, 2014. Following the renewal of her employment contract, on June 27, 2014, the EEOC determined that the termination notice was a Title VII violation in retaliation for the March 10 EEOC charge and invited the parties to participate in conciliation efforts.[1]

---

[1] The EEOC subsequently determined that the conciliation efforts were unsuccessful and issued a right to sue letter for this claim.

Shortly thereafter, on July 1, 2014, the Mound Bayou Public School District consolidated with the North Bolivar School District to form the North Bolivar Consolidated School District (the "Consolidated School District"). Prior to the consolidation, Johnnie Vick, a former Mound Bayou Elementary School principal, was hired to serve as superintendent of the Consolidated School District. Upon recommendation from Superintendent Vick, Mound Bayou's former superintendent, William Crockett, was appointed to serve as the deputy superintendent of the Consolidated School District.

On July 18, Dr. Stringer sent a request to Superintendent Vick asking that certain employees receive pay raises. As part of this request, she asked for Shawneequa Beal to be named assistant principal as an accommodation for Dr. Stringer's glaucoma. There had never been an assistant principal during Dr. Stringer's tenure. She explained that Ms. Beal could assist Dr. Stringer in carrying out disciplinary actions and administering the alternative education programs, including assistance with the alternative school, reading assistance, and assistance with completing required reports. Dr. Stringer was still capable of reading; she just needed assistance to improve her efficiency because her impaired vision forced her to read slowly and in large print. After Dr. Stringer's third request for Ms. Beal to be named assistant principal as an accommodation for her glaucoma, Superintendent Vick responded on September 30 that there was no room in the budget to promote Ms. Beal to an assistant principal position. However, to accommodate Dr. Stringer, Superintendent Vick informed her that the funding for Ms. Beal's position had been moved from Title I to the school district, which meant that Dr. Stringer was authorized to assign Ms. Beal to any duties she felt were necessary.

On October 29, 2014, Dr. Stringer filed her third EEOC charge. Among other things, she alleged that the Consolidated School District retaliated

against her by failing to advertise the deputy superintendent position, which prevented her from applying for the job.

Near the end of the semester, on December 16, Dr. Stringer received a letter from Superintendent Vick notifying her that she had been reassigned to serve as the Consolidated School District "Vocational/Alternative School Director" effective January 5, 2015. Her salary would remain unchanged. This was a new position created following the consolidation of the two school districts, and Dr. Stringer was the first person assigned to it. In the reassignment letter, Superintendent Vick explained that he felt "it would be more beneficial to [Dr. Stringer] as well as the district to reassign [her] to another position." Significantly, the letter also informed Dr. Stringer that she would now have to work at Broad Street High School in Shelby, Mississippi, about seven miles from JFK High School.

Dr. Stringer responded to the reassignment letter the following day, requesting a public hearing prior to the January 5 effective date, a school board review of the reassignment decision, and rescission of the reassignment. She also alleged that relocating her to a work site in Shelby, Mississippi, violated the ADA because of her known visual impairment due to glaucoma. One day later, on December 18, Superintendent Vick informed Dr. Stringer that she was not entitled to a hearing but that her reassignment was subject to review by the board of trustees, and he would pass her request along to the president of the board when preparing the agenda for the January board meeting. That same day, Dr. Stringer filed an amendment to her October 29 EEOC charge, alleging that the Consolidated School District demoted her instead of providing her a reasonable accommodation as principal, and that this action was taken in retaliation for filing her prior EEOC charges. She also suggested that she was discriminated against because of her sex when the Consolidated School District failed to advertise its deputy superintendent position.

No additional activity occurred during the winter break.  On January 5, 2015, the day school resumed and the effective date of the reassignment, Dr. Stringer tendered her resignation, to become effective January 26, 2015.  She alleged that the reassignment coerced her to resign because it was "in direct violation of [her] doctor's commuting restrictions and safety restrictions" and thus made it impossible for her to perform her responsibilities.  The school board subsequently accepted her resignation at its January meeting, and her employment ended on January 26, 2015.   Dr. Stringer took a combination of sick and personal leave from January 5 to January 26, and thus never reported to work while employed as the director of the alternative and vocational schools.   On March 5, 2015, Dr. Stringer filed her final EEOC charge of discrimination against the Consolidated School District, making additional allegations of retaliation and ADA violations for not properly paying her in January 2015 and denying her a pay increase commensurate with similar district-wide administrative positions.

Upon receipt of her right to sue letters, Dr. Stringer filed four separate *pro se* complaints alleging various discrimination and retaliation claims under the ADA, Title VII, the Equal Pay Act, and Mississippi state law, which were consolidated into one case.  The district court granted summary judgment to the Defendants on all of Dr. Stringer's claims.  Dr. Stringer timely appealed, challenging the adverse summary judgment of several of her ADA and Title VII claims.

## II.  Standard of Review

We review a grant of summary judgment de novo, applying the same standard as the district court.  *Feist v. La., Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (quoting *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414 (5th Cir. 2003)).  "Summary judgment is appropriate if the moving party can show that 'there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law.'" *United States v. Renda Marine, Inc.*, 667 F.3d 651, 655 (5th Cir. 2012) (quoting FED. R. CIV. P. 56(a)). We also view "all facts and evidence in the light most favorable to the non-moving party." *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 433 (5th Cir. 2013). However, where "the nonmovant would bear the burden of proof at trial" and "the movant for summary judgment correctly points to the absence of evidence supporting the nonmovant with respect to such an issue, the nonmovant . . . must produce sufficient summary judgment evidence to sustain a finding in its favor on the issue." *Tran Enters., LLC v. DHL Express (USA), Inc.*, 627 F.3d 1004, 1010 (5th Cir. 2010) (per curiam).

### III. Discussion

Dr. Stringer challenges the dismissal of various employment discrimination claims falling under the ADA and Title VII, namely (1) ADA discrimination, (2) ADA failure to accommodate, (3) ADA constructive discharge, (4) Title VII discrimination, and (5) retaliation.[2] We affirm the district court's grant of summary judgment on all of her claims.

### A. ADA Discrimination Claims

Dr. Stringer appeals the dismissal of two ADA discrimination claims: one based on her reassignment and the other based on alleged disparate compensation. When, as here, the plaintiff relies on indirect evidence, we analyze the claim under the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), burden-shifting analysis, which requires the plaintiff to first establish a prima facie case of discrimination. *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was

---

[2] Any additional dismissed claims were either not raised on appeal or waived due to insufficient briefing. *See Douglas W. ex rel. Jason D. W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 210 n.4 (5th Cir. 1998) ("[F]ailure to provide any legal or factual analysis of an issue on appeal waives that issue.").

qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability." *Id.* at 697 (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)).

Dr. Stringer contends that her reassignment was an adverse employment action because it was a demotion. "[A]n adverse employment action consists of '*ultimate employment decisions* such as hiring, granting leave, discharging, promoting, and compensating.'" *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (quoting *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002)).[3] A transfer can qualify as an adverse employment action when it is the equivalent of a demotion. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007). This occurs when "the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement." *Id.* at 613. However, where the evidence merely shows "that a plaintiff was transferred from a prestigious and desirable position to another position, that evidence is insufficient to establish an adverse employment action." *Pegram*, 361 F.3d at 283.

There is no evidence indicating that Dr. Stringer's reassignment was objectively worse than her position as principal. The Consolidated School District attested that Dr. Stringer's responsibilities as director of the alternative and vocational schools would have been similar to her

---

[3] Although *Pegram* discusses the definition of "adverse employment action" within the context of Title VII, we have held that the limitations placed on the definition of Title VII adverse employment actions apply to the similarly worded provisions of the ADA. *McKay v. Johanns*, 265 F. App'x 267, 269 (5th Cir. 2008) (per curiam). Indeed, we regularly apply Title VII standards to ADA claims. *See, e.g.*, *LHC Grp.*, 773 F.3d at 694 (noting that the same burden-shifting framework first articulated in a Title VII case applies to ADA discrimination claims; *Cardiel v. Apache Corp.*, 559 F. App'x 284, 288 (5th Cir. 2014) (per curiam) (applying the standard developed for comparators used in Title VII termination discrimination cases to a termination discrimination claim under the ADA, among others) (citing *Lee v. Kan. City S. Ry.*, 574 F.3d 253, 259 (5th Cir. 2009)); *Grubic v. City of Waco*, 262 F. App'x 665, 666 n.6 (5th Cir. 2008) (per curiam) ("[T]his court applies the same analysis to ADA and Title VII retaliation claims.").

responsibilities as a principal.  The evidence also shows that her salary remained the same.  Dr. Stringer's assertions that the reassignment subjected her to dangerous working conditions and less interesting work are mere speculation because she had no personal knowledge of the day-to-day responsibilities of the job.  She testified that director of the alternative and vocational schools was a newly created position, no one had informed her of the director's responsibilities, and she never performed any of the responsibilities as she was on leave for the duration of her time in the position.  Her assertions, therefore, cannot preclude summary judgment.  *See Simmons v. Willcox*, 911 F.2d 1077, 1082 (5th Cir. 1990) ("[S]peculative allegations . . . are insufficient to create a genuine issue of material fact precluding summary judgment."); *see also Otis v. Bd. of Supervisors of La. State Univ.*, 275 F.3d 47, 2001 WL 1268969, at *1 (5th Cir. 2001) (per curiam) (unpublished) (noting that the plaintiff "never labored under his new shift assignment, so he cannot claim that the shift change in fact caused him to suffer an adverse employment action").

Furthermore, there is no evidence to support a finding that she was reassigned to a position with a less prestigious reputation.  It was a new position in a new consolidated school district and thus lacked any history upon which a reputation could be developed.  Moreover, the fact that Dr. Stringer moved from a high school position to a district-wide position suggests that it may have been a more prestigious position.  Indeed, Dr. Stringer herself argues in her compensation discrimination claim that her reassignment to a multi-position, district-wide position entitled her to a pay increase, suggesting that the reassignment should have been considered a promotion.  Accordingly, the district court did not err when it granted summary judgment on Dr. Stringer's disability discrimination reassignment claim.

No. 17-60282

As to the compensation discrimination claim, Dr. Stringer argues that, following the reassignment, the Consolidated School District failed to increase her pay commensurate with two non-disabled, multi-position, district-wide administrators.  One way for a disabled employee to prove a nexus between an adverse employment decision and her disability is to show that she was either replaced by a non-disabled person or treated less favorably than a non-disabled employee.  *See LHC Grp.*, 773 F.3d at 695–96 (noting that evidence of a non-disabled employee's more favorable treatment is "one possible way to prove nexus between the employee's disability and her termination").   More specifically, to establish a compensation discrimination claim, the plaintiff must show that she was paid less than the comparator for "work requiring substantially the same responsibility." *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008).

The problem with Dr. Stringer's argument is that she failed to produce evidence of the responsibilities for each position.  Thus, she failed to create a fact issue as to whether her position as the director of the alternative and vocational schools required substantially the same responsibility as the positions held by her comparators.  Both comparators held different job titles than Dr. Stringer, and there is no evidence about whether someone holding those job titles shared substantially similar responsibilities to the director of the alternative and vocational schools.[4]    Evidence of district-wide responsibilities alone is too general to show that the specific work of each position required substantially the same responsibility and thus merited similar pay.  *See, e.g., Martin v. Budget Rent-A-Car Sys. Inc.*, 432 F. App'x 407, 411 (5th Cir. 2011) (per curiam) (noting that evidence of customer service

---

[4] The first comparator, Linda Robinson, served as the director of special education and professional development for the Consolidated School District.   The second comparator, Bobbie Moore, served as the coordinator for curriculum and testing for the Consolidated School District.

responsibilities was too general to show that comparators were similarly situated to a plaintiff who held a different customer service position). Moreover, as already discussed, Dr. Stringer's testimony indicates that she had no personal knowledge about the scope of her responsibilities as director of the alternative and vocational schools. Her ADA compensation discrimination claim, therefore, cannot survive summary judgment.[5]

**B. ADA Failure to Accommodate Claim**

The ADA generally prohibits an employer from failing to reasonably accommodate a qualified employee's known disabilities. *Feist*, 730 F.3d at 452. A disabled employee is entitled only to a reasonable accommodation, not the employee's preferred accommodation, and has no right to a promotion or to choose a job assignment. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011).

Dr. Stringer argues that the Consolidated School District failed to reasonably accommodate her known disability because it did not comply with her request to promote Ms. Beal to assistant principal. At bottom, Dr. Stringer's ADA accommodation request was primarily for reading assistance and assistance in some after-school extracurricular activities. The undisputed facts show that the Consolidated School District did not have room in the budget to hire an assistant principal, a position that had never existed during Dr. Stringer's tenure. Dr. Stringer received a reasonable accommodation when the Consolidated School District expressly permitted her to use Ms. Beal as needed and moved Ms. Beal to a position funded by district funds to avoid any restrictions attached to federally funded positions. Because this was an

---

[5] Dr. Stringer argues that the Consolidated School District failed to move for summary judgment on the ADA compensation discrimination claim. We disagree. The Consolidated School District identified the compensation discrimination claim as an ADA discrimination claim and then moved for summary judgment on all of the ADA discrimination claims for lack of causation evidence.

obvious solution to Dr. Stringer's accommodation request, no interactive process was necessary. *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999) ("[A]s the interpretive guidelines and courts have recognized, there may be some situations in which the reasonable accommodation is so obvious that a solution may be developed without either party consciously participating in an interactive process."); *see also Myers v. Shell Deer Park Ref. Co.*, 260 F.3d 622, 2001 WL 650451, at *2 (5th Cir. 2001) (per curiam) (unpublished) (holding that there is no requirement that the employer engage in an interactive process to develop a reasonable accommodation).

Though Ms. Beal was subsequently assigned to temporarily teach a class for three periods of the day after another teacher resigned, there is no evidence that this rendered the accommodation unreasonable. Dr. Stringer's unsupported assertions that this assignment defeated Ms. Beal's value as an accommodation cannot override the undisputed fact that Ms. Beal was in the classroom for only three periods of the day until a permanent replacement could be found. *See Burch v. City of Nacogdoches*, 174 F.3d 615, 622 n.11 (5th Cir. 1999) ("Construing the facts in the light most favorable to [the plaintiff] does not require us to credit otherwise unsupported assertions."). There is no evidence that Dr. Stringer told the Consolidated School District that she required Ms. Beal's assistance every period of the day, nor is there evidence that the need for such accommodation was obvious. Indeed, the evidence shows that Dr. Stringer was still capable of reading; she just needed assistance to improve her efficiency.

Dr. Stringer also suggests that the delay of over two months in granting her reasonable accommodation request was an ADA violation. However, we have observed that "the employer is entitled to move at whatever pace he chooses as long as the ultimate problem—the employee's performance of her duties—is not truly imminent." *Loulseged*, 178 F.3d at 737. Here, Dr.

No. 17-60282

Stringer's first request was made during the summer, prior to the start of the school year. She was granted an accommodation in late September, after the school year had begun, but she points to no evidence indicating that she could not perform her duties for a limited time without the accommodation. To the contrary, as previously discussed, the evidence indicates that she was still capable of performing her duties.

Dr. Stringer's final argument that, following her reassignment, the Consolidated School District violated the ADA by failing to give her a "designated person to reasonably accommodate her in the new location" also fails. There is no evidence the Consolidated School District would not have designated someone to assist her within a reasonable time. Rather than trying to work through an accommodation with the Consolidated School District, Dr. Stringer rushed to resign, pre-empting any possibility to accommodate her needs. Dr. Stringer found out about her reassignment at the end of the semester—right before winter break—and then tendered her resignation on the first day of the next semester and took paid leave until her resignation became effective. "Any discussion of the accommodations that might have been provided or denied is mere speculation." *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009).

## C. ADA Constructive Discharge Claim

A constructive discharge occurs when "the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 342 (5th Cir. 2005) (quoting *Jurgens v. EEOC*, 903 F.2d 386, 390 (5th Cir. 1990)). "Whether an employee would feel forced to resign is case-and fact-specific . . . ." *Id.* We apply an objective "reasonable employee" test, which asks "whether a reasonable person in the plaintiff's shoes would have felt compelled to resign." *Id.*

14

Dr. Stringer first contends that she was constructively discharged because the Consolidated School District both denied her requests for a reasonable accommodation and demoted her when she was reassigned. We have already determined that Dr. Stringer received a reasonable accommodation and failed to produce evidence indicating that her reassignment was a demotion. She had no personal knowledge of the working conditions she would have been subjected to as director of the alternative and vocational schools. Accordingly, she cannot show that she was constructively discharged based on the working conditions of that position.

Dr. Stringer also suggests that the Consolidated School District constructively discharged her by accepting her resignation despite learning from the resignation letter that she believed the reassignment was "in direct violation of [her] doctor's commuting restrictions and safety restrictions." Post-resignation conduct, however, cannot be used to show that pre-resignation working conditions were so intolerable that a reasonable employee would have felt compelled to resign. *See, e.g.*, *Jaetzold v. Glazer Wholesale Drug Co.*, 199 F.3d 437, 1999 WL 1067064, at *2 (5th Cir. 1999) (unpublished).

Even if we were to construe this argument as a second reason why the reassignment itself amounted to a constructive discharge, it would still prove unavailing. A review of the doctor's note attached to Dr. Stringer's resignation letter shows that her reassignment did not violate her doctor's commuting and safety restrictions. The note merely said that it was unsafe for Dr. Stringer to drive—an activity she had stopped performing at least a year prior to this incident—and that she needed to work in a safe environment. There is no evidence that the reassignment made her working conditions less safe. There is no evidence that the reassignment required her to personally drive to work. There is also no evidence that Dr. Stringer notified the Consolidated School

District that she could not arrange for adequate transportation to work, or that the Consolidated School District had any reason to know this was the case.

Furthermore, as principal of JFK High School, Dr. Stringer had arranged for transportation to work on a regular basis.   One would expect, then, that prior to resigning, a reasonable employee in Dr. Stringer's shoes would have first sought to arrange for transportation to her new work location, which was only seven miles away from JFK High School.   Having been unable to find an adequate means of transportation, a reasonable employee would then have notified her employer about her transportation needs and waited for a response prior to resigning.   *See Keelan*, 407 F.3d at 343 (noting that reasonable employees attempt to resolve employment concerns prior to resigning).   Instead, Dr. Stringer tendered her resignation on the effective date of her reassignment based on a mischaracterization of the conflict between her reassignment and her medical restrictions.   She also chose to take this action prior to the January school board meeting, despite being told that her reassignment could be reviewed at that meeting.   *See Boze v. Branstetter*, 912 F.2d 801, 805 (5th Cir. 1990) (per curiam) ("Referring a disgruntled employee to an internal grievance process could never constitute the intolerable work conditions necessary to establish constructive discharge.").   On this record, Dr. Stringer cannot show that the reassignment made her working conditions so intolerable that a reasonable person in her shoes would have been forced to resign.

**D. Title VII Discrimination Claim**

Dr. Stringer contends that she was denied a promotion based on her sex because the Consolidated School District selected a male, William Crockett, to serve as deputy superintendent without advertising the position. As with the ADA claims, the *McDonnell Douglas* burden-shifting framework applies to Dr. Stringer's Title VII claim.  *See Davis v. Dall. Area Rapid Transit*, 383 F.3d 309,

316–17 (5th Cir. 2004). To establish a prima facie case in a failure to promote case, the employee must show "(1) that the employee is a member of the protected class; (2) that he sought and was qualified for the position; (3) that he was rejected for the position; and (4) that the employer continued to seek or promoted applicants with the plaintiff's qualifications." *Id.* at 317.

The evidence shows that the Mississippi Department of Education recommended that the Consolidated School District hire a deputy superintendent who had district-wide experience. Unlike Dr. Stringer, Mr. Crockett had district-wide experience as a superintendent, which is one of the reasons he got the job. Accordingly, we affirm the adverse summary judgment on Dr. Stringer's Title VII failure-to-promote claim because Dr. Stringer failed to create a genuine issue of material fact as to the fourth element of her prima facie case.

**E. Retaliation Claims**

Dr. Stringer appeals the dismissal of six retaliation claims based on her (1) reassignment, (2) notice of termination, (3) alleged constructive discharge, (4) alleged tortious interference with her employment contract and business relationships, (5) alleged disparate compensation, and (6) alleged denial of promotion. A plaintiff can establish a prima facie case of retaliation under the ADA or Title VII by showing that "(1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *Feist*, 730 F.3d at 454. The definition of an adverse employment action in the retaliation context is broader than in the discrimination context. *See Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945–46 (5th Cir. 2015) (noting that adverse employment actions for retaliation claims are not limited to the workplace, and the standard is "less demanding" than an "ultimate employment decision"

17

(quoting *Donaldson v. CDB Inc.*, 335 F. App'x 494, 506 (5th Cir. 2009) (per curiam)). It requires an adverse action that is "materially adverse" to a reasonable employee, which means that the employer's action is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 945 (alteration in original) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). However, "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 945–46 (quoting *Burlington*, 548 U.S. at 69).

1. Reassignment Claim

Dr. Stringer contends in her reassignment retaliation claim that she suffered an adverse employment action because the reassignment was a demotion.[6] We have already determined that the evidence does not support a finding that her reassignment was a demotion. Moreover, there is no additional evidence to support a finding that the reassignment would dissuade a reasonable person in Dr. Stringer's shoes from filing an EEOC charge. Though Dr. Stringer testified that the person who had been driving her to JFK High School was not willing to drive her to Broad Street High School, there is no evidence that she made any reasonable attempt to arrange for a new means of transportation. The reassignment only modestly increased Dr. Stringer's commute by approximately seven miles, and the evidence does not indicate, in this era of ridesharing and other transportation options, that it would have been a significant problem for Dr. Stringer to arrange for an adequate means of transportation for this commute, as she did for her commute to JFK High School. *See Webb v. Round Rock Indep. Sch. Dist.*, 595 F. App'x 301, 302–03

---

[6] Dr. Stringer incorrectly asserts that the Consolidated School District did not move for summary judgment on the reassignment retaliation claim. The motion for summary judgment devoted an entire subsection to arguing that this claim was without merit.

(5th Cir. 2014) (per curiam) (noting that the plaintiff's allegation that "she had no adequate means of transportation" for her sixteen mile commute lacked sufficient "context facts to evaluate whether the transfer was truly adverse— i.e., whether the commute was truly a significant problem"). Any such conclusion would be speculative and thus cannot preclude summary judgment. *See Simmons*, 911 F.2d at 1082. Furthermore, Dr. Stringer's reassignment did not dissuade her from later filing additional EEOC charges. Accordingly, summary judgment was properly granted for this claim.

2. Notice of Termination Claim

Dr. Stringer correctly observes that the Consolidated School District did not move for summary judgment on her notice of termination retaliation claim, which alleged retaliation for the March 2014 EEOC charge. The Consolidated School District moved for summary judgment on the notice of nonrenewal retaliation claim, but that was a separate claim alleging retaliation for the February 2013 EEOC charge. The district court likewise failed to expressly address this claim in its memorandum opinion, despite dismissing the entire case, and there is no evidence that the district court provided notice to Dr. Stringer that it might *sua sponte* dismiss this claim.

Nevertheless, this was a harmless error because Dr. Stringer concedes that she defended this claim in her summary judgment response, and the evidence presented by Dr. Stringer—both on appeal and before the district court—fails to create an issue of material fact as to whether this was an adverse employment action. *See Powell v. United States*, 849 F.2d 1576, 1582 (5th Cir. 1988) ("[E]rror in notice is harmless if the nonmoving party admits that he has no additional evidence anyway or if . . . the appellate court evaluates all of the nonmoving party's additional evidence and finds no genuine issue of material fact."). When Dr. Stringer received the notice of termination, she had already been notified that her contract would not be

renewed. Thus, to show that the notice of termination was an additional adverse employment action, she was required to show that *additional harm* caused by the notice of termination would deter someone in her shoes from filing an EEOC charge. Dr. Stringer provided no evidence to support such a finding. The notice of termination provided the same reason for her dismissal as the notice of nonrenewal and was effective on the same date as the prior notice of nonrenewal. Moreover, according to the Mississippi Supreme Court, the procedural safeguards attendant to both forms of dismissal are "essentially the same." *Harris v. Canton Separate Pub. Sch. Bd. of Educ.*, 655 So. 2d 898, 903 (Miss. 1995). In fact, the burden of proof is more advantageous to the employee when her contract is terminated rather than nonrenewed. *See Miss. Emp't Sec. Comm'n v. Phila. Mun. Separate Sch. Dist.*, 437 So. 2d 388, 392–94 n.4 (Miss. 1983). Thus, the evidence does not support a finding that substituting a notice of termination for a notice of nonrenewal would prevent a reasonable person in Dr. Stringer's shoes from filing an EEOC charge.

3. <u>Constructive Discharge, Tortious Interference, Disparate Compensation, and Denial of Promotion Claims</u>

Dr. Stringer's retaliation claims for her alleged constructive discharge, tortious interference, and disparate compensation are based on the same underlying events as her ADA discrimination claims of constructive discharge and disparate compensation. Therefore, each of these claims fails to survive summary judgment because there is no genuine issue of material fact as to whether Dr. Stringer was constructively discharged or paid less than similarly situated colleagues. Similarly, Dr. Stringer's retaliation claim for her alleged denial of a promotion is based on the same underlying events as her corresponding Title VII discrimination claim. Therefore, this claim, too, fails to survive summary judgment because there is no genuine issue of material

fact as to whether Dr. Stringer was treated unfairly in not receiving the promotion.[7]

AFFIRMED.

---

[7] Dr. Stringer incorrectly asserts that the Consolidated School District did not move for summary judgment on the alleged constructive discharge retaliation claim. The Consolidated School District's motion for summary judgment devoted an entire section to arguing that there was no constructive discharge. Although the Consolidated School District does not appear to have moved for summary judgment on the tortious interference, disparate compensation, and failure-to-promote retaliation claims, and the district court did not provide notice that it might dismiss these claims on summary judgment, this was harmless error because all three claims are premised on the same facts as the alleged disparate compensation, constructive discharge, and failure to promote discrimination claims and fail for similar reasons. *See Powell*, 849 F.2d at 1582.